Raymond H. SCHNEIDER and Dean Schneider, Plaintiffs,

v.

WISCONSIN UFCW UNIONS AND EMPLOYERS HEALTH PLAN, Defendant.

No. Civ.A. 97–C–144.

United States District Court, E.D. Wisconsin.

July 22, 1998.

---

Lee J. Geronime, Michael Best & Friedrich, Milwaukee, WI, for Plaintiffs.

Richard P. Carr, Thomas C. Binger, Reinhart, Boerner, Van Deuren, Norris & Rieselbach, S.C., Milwaukee, WI, for Defendant.

**ORDER GRANTING IN PART THE PLAINTIFFS' MOTION FOR ATTORNEY FEES AND COSTS AND GRANTING THE PLAINTIFFS' SUPPLEMENTAL MOTION FOR FEES AND COSTS**

REYNOLDS, District Judge.

On December 4, 1997, this court granted summary judgment to the plaintiffs in this Employee Retirement Income Security Act ("ERISA") case. The court held that Dean Schneider's use of enteral nutritional therapy—required after emergency brain surgery left him unable to swallow—was "medically necessary," and therefore covered by the Wisconsin UFCW Unions and Employers Health Plan ("Plan"). On February 8, 1998, the court entered judgment in favor of the plaintiffs in the amount of $25,288.22.

Presently before the court is the plaintiffs' motion for attorney fees and costs and the plaintiffs' supplemental motion for fees and costs associated with the initial motion for fees and costs. The initial motion seeks $35,004.43 in costs and attorney fees. The supplemental motion seeks $4,230.00. Section 1132(g)(1) of 29 U.S.C. gives this court the discretion to make such awards. The defendant Plan both opposes an award categorically and, in the alternative, opposes portions of the sought award. While the Plan raises several meritorious points, the analysis below demonstrates that the plaintiffs are entitled to recover a grand total of $34,472.93 in fees and costs.

**I. DISCUSSION**

A. *The Plan's Denial of Coverage was Not Substantially Justified so as to Preclude an Award of Fees.*

■ The court starts with a modest presumption in favor of awarding costs and fees. *Bittner v. Sadoff & Rudoy Indus.*, 728 F.2d 820, 830 (7th Cir.1984). However, § 1132(g)(1) requires a more in-depth analysis which is presently governed by two somewhat overlapping legal tests. The first asks, simply, whether the losing party's substantive position in the underlying litigation was "substantially justified." *Brewer v. Protexall, Inc.*, 50 F.3d 453, 458 (7th Cir.1995). The second analysis requires the court to ponder a series of factors:

(1) the degree of the offending parties' culpability or bad faith; (2) the degree of the ability of the offending parties to satisfy personally an award of attorneys' fees; (3) whether or not an award of attorneys' fees would deter other persons acting under similar circumstances; (4) the amount of benefit conferred on members of the pension plan as a whole; and (5) the relative merits of the parties' positions.

*Id.* The Plan pleads its case against costs and fees under both tests.

■ Taking the first test first, the court finds contemplating whether a litigant's position was "substantially justified" to be a less than fruitful exercise. This test does not require a litigant to win a lawsuit to avoid paying the other side's fees nor does it require a finding of frivolousness in order to justify a fee award. *Bittner v. Sadoff & Rudoy Indus.*, 728 F.2d 820, 830 (7th Cir. 1984). This, however, merely tells us what the test does *not* require.

Though not always the most popular juridical technique, this court takes recourse in the ordinary meaning of the words "substantially justified"—was the underlying, substantive legal question presented in this case

a close call? Would the Plan's reading of its obligation to the plaintiffs satisfy the proverbial reasonable person? *See Pierce v. Underwood*, 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) (construing phrase "substantially justified" in Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A)). No and no. As explicated in this court's decision of December 4, 1997, the Plan's denial of benefits in this case contravened the plain language of the Plan's text. Indeed, the court held the Plan's position to be arbitrary and capricious. A legal position cannot be concurrently arbitrary and capricious, on one hand, and substantially justified on the other.

The court now turns to the multi-factor test. The first factor looks to the Plan's bad faith or culpability. While the court finds no evidence of bad faith, the Plan's position in this matter suggests a hard-nosed approach to meeting responsibilities of unique import. Based on the limited evidence on this point before the court, it seems that in striking a balance between serving the Plan's beneficiaries and protecting the Plan's assets, the Plan leaned inappropriately far towards protecting its assets to the detriment of a beneficiary.

The Plan concedes that the second factor, its ability to pay a fee award, is met. The third factor assesses the deterrent value of a fee award. The Plan argues that there is no such value in this case because the precise facts present here are unlikely to recur. Contrarily, the court finds this line of argument far too narrow. Without having to compensate a beneficiary for legal fees, the Plan would have precious little incentive not to err in favor of denying benefits. Such a bias would not be a function of bad faith, but of fiduciary analysis. If, however, the Plan gave more weight to the likelihood of having to shoulder a beneficiary's legal fees, in addition to its own fees, and the contested benefits, the Plan would be required to engage in a more careful decision-making process before denying claims.

Indeed, the equation would require balancing this potential, cumulative liability against the probability of the Plan's denial prevailing in court. Having found, supra, that the Plan denied the benefits in this case based upon a facially incorrect interpretation of the Plan's text, i.e., a very low probability of success, adding potential liability for a beneficiary's legal fees to the liability side of the equation is warranted as a means of requiring greater scrutiny to a denial of benefits. *See Brewer*, 50 F.3d at 458 (fee award affirmed so that defendant and others would be "discouraged from litigating on the basis of similarly unreasonable positions in the future").

The fourth factor apprehends the benefits conferred on Plan members generally by an award of fees in this case. It is true that a fee award will be drawn from assets maintained for the benefit of Plan members, a direct financial detriment. On the other hand, a fee award in this case could benefit members in two ways. First, a fee award will encourage a more rigorous standard in denying benefits to members. Second, if the Plan becomes somewhat gun-shy about litigating arbitrary denials of benefits, Plan members will not have to shoulder legal fees the Plan itself incurs in this type of suit. The court cannot place concrete values on these competing factors. Nonetheless, the court finds that, in all probability, Plan members will benefit more from the type of institutional change encouraged by a fee award than they will feel the sting of an award in this case.

Finally, the fifth factor requires the court to assess the relative merits of the parties' positions. As made clear above, the court finds that the plaintiffs' read of the Plan's text was correct, and the Plan's read was arbitrary. Simply put, the plaintiffs deserved to have the medical expenses at issue covered by the Plan. And, they deserved to enjoy these benefits without the trouble of a federal lawsuit. Both the "substantially justified" and the multi-factor test lead to the same conclusion: The plaintiffs are entitled to a fee award under § 1132(g)(1).

### B. *The Plaintiffs Need Not Have Personally Paid Attorney Fees.*

■ The plaintiffs have not actually paid for the medical services that were the focus of this coverage dispute. The Plan suspects that the provider of those services may have agreed to indemnify the plaintiffs for their

legal fees. The Plan argues that these facts preclude a fee award because, in the Plan's estimation, a fee award would amount to an award to the service provider and not to the plaintiffs.

In contrast, § 1132(g)(1) authorizes an award to a "party." The plaintiffs, and not the service provider, are in fact parties to this suit. Whatever private arrangements the plaintiffs have or have had regarding legal fees is not relevant here. The issue is whether the plaintiffs are entitled to an award of fees incurred to vindicate their rights in this lawsuit. The Plan offers no legal authority for the additional requirements for a fee award that the Plan advances.

### C. *Fees and Costs for the Administrative Phase*

■ Section 1132(g)(1) permits an award of "attorney's fee and cost of action." This compares with language in other fee-shifting statutes such as, for example, Title VII's 42 U.S.C. § 2000e–5(k) which permits an award for "any action or proceeding." This comparison has led courts to deny fee awards for the administrative phase of ERISA litigation. *See Cann v. Carpenters' Pension Trust Fund,* 989 F.2d 313 (9th Cir.1993). For the purposes at hand, the distinction between the administrative and judicial phases of litigation is one of greatest importance to legislators. To litigants and their attorneys, the distinction is less clear because administrative exhaustion is often a statutory predicate to suit and because legal work performed during the administrative phase will lay the foundation for the judicial phase, and will often make redundant work done during court litigation. Thus, the *Cann* court's holding could well introduce a measure of inefficiency into the legal preparation of an ERISA dispute. Nonetheless, any problem is with the statute and not with the reasoning in *Cann.* Plaintiffs' counsel's bills from work on the administrative phase of this dispute, amounting by agreement to $3,299.00, shall be disallowed.

The Plan attempts to bootstrap into the exclusion of fees for the administrative phase any fees expended prior to the filing of the complaint in this court. Here, these fees, incurred during 1996, amount to $4,397.00. One wholly conclusory paragraph in the Plan's responsive brief cites no authority to support the disallowance of these expenses. Therefore, fees from 1996 will not be categorically excluded.

### C. *The Plaintiffs' Request for Costs Under § 1132(g)(1) is Not Untimely.*

■ The Plan also argues that the plaintiffs' request for costs is barred as untimely under Local Rule 9.01 (E.D.Wis.). That rule requires the winner of a judgment to file and serve a bill of costs within 15 days from entry of judgment. There is no dispute that the plaintiffs' motion for attorney fees and costs was filed and served well after the 15 day deadline established by Rule 9.01.

A motion for fees and costs under § 1132(g)(1) falls under Fed.R.Civ.P. 54. *Bittner v. Sadoff & Rudoy Indus.,* 728 F.2d 820 (7th Cir.1984). Authorized by Fed. R.Civ.P. 54(d)(2)(D), the Eastern District of Wisconsin has promulgated Local Rule 9.04 which provides for a 90–day deadline for filing motions for attorney fees. The question the Plan raises is whether the "costs" allowed by § 1132(g)(1) fall under this 90–day rule or under Local Rule 9.01's (E.D.Wis.) shorter deadline.[1]

Rule 9.01 contemplates the costs awarded, as a matter of course, to a party who has won a judgment. Section 1132(g)(1) is a specific statutory authorization for an award of costs and attorney fees. As a matter of construction of the local rules, it would seem that Rules 9.01 (costs) and 9.04 (attorney fees) should not bifurcate an award that the statute appears to contemplate as unified. An alternative reading would not resolve a lawsuit's final issues more quickly, i.e., under Rule 9.01's shorter deadline. It would only necessitate two motions and sets of supporting papers with all of the attendant adminis-

---

1. Fed.R.Civ.P. 54(d), which authorizes an award of costs other than attorney fees, contains no

deadline for filing and serving a bill of costs.

trative cost. Therefore, the court holds that a motion under § 1132(g)(1) for fees and costs is timely if it complies with Local Rule 9.04 (E.D.Wis.).

### D. Plaintiffs' Counsel's Hourly Rates and Division of Labor are Not Unreasonable.

■ The Plan next argues that too much of the plaintiffs' work in this action was done by attorneys with higher billing rates than others at the same large firm and less senior attorneys who worked on the case. The result, claims the Plan, is that the average hourly rate of slightly over $200 is unreasonably high. Specifically, the Plan asserts that many of the tasks done by senior, expensive attorneys should have been delegated to more junior and lower-priced attorneys.

The Plan points to nothing in the record that suggests inflated or double billing. Rather, the Plan argues that plaintiffs' counsel should have delegated legal work in this case more "efficiently." The court has no basis on which to reorganize how plaintiffs' counsel's firm does business. The instant question is simply whether the proposed fees are reasonable. In the instant case, two large, high-priced law firms represented the parties. A little over half of the legal work on the plaintiffs' behalf was done by higher-priced attorneys. There is nothing in the record to establish that this distribution of work was unreasonable or that the resultant average hourly rate of a little over $200 exceeds the going market rates for legal representation by like firms and attorneys.

### E. The Plaintiffs are Not Entitled to Fees Expended Preparing Findings of Fact and Conclusions of Law.

■ Following this court's decision of December 4, 1997, as to liability, the parties informed the court of a settlement as to the amount of the judgment. Along with appropriate papers embodying this agreement, the plaintiffs submitted detailed proposed factual findings and conclusions of law. The court found that document unnecessary and, on February 4, 1998, declined to incorporate it into the judgment in this case.

The Plan argues that it should not have to pay fees, totalling $1,462.50, incurred in drafting this superfluous submission. The court agrees; the proposed factual findings and conclusions of law submitted by the plaintiffs following judgment as to liability were not necessary to this litigation and the Plan will not be held to pay the related fees.

### F. The Plaintiffs are Entitled to Supplemental Fees and Costs Related to the Initial Motion for Fees.

■ On May 22, 1998, the plaintiffs filed a supplemental motion for an award of costs and fees related to work surrounding the initial motion for costs and fees. The Plan's response reiterates the arguments made in the briefing of the first motion for fees and costs. Because the court has found, *supra*, in favor of the plaintiffs on the relevant points, the court will allow a supplemental award of fees and costs in the amount of $4,230.00.

## II. CONCLUSION

The plaintiffs Raymond H. Schneider and Dean Schneider's motion for attorney fees and costs under 29 U.S.C. § 1132(g)(1) is **GRANTED IN PART.**

The plaintiffs shall recover the requested $35,004.43 less $3,299.00 in attorney fees incurred during the administrative phase of this dispute, and less $1,462.50 in attorney fees incurred for drafting proposed findings of fact and conclusions of law after this court's judgment as to liability.

The plaintiffs' supplemental motion for costs and fees is **GRANTED** in the amount of $4,230.00.

The plaintiffs shall recover a grand total of $34,472.93 from the defendant.

**SO ORDERED.**