**Janice I. SPEARMAN, Plaintiff,**

v.

**MOTOROLA DISABILITY INCOME PLAN, Defendant.**

No. CIV. 3:00–CV–10211.

United States District Court,
S.D. Iowa.

April 10, 2003.

Kay M. Johansen, Day, Rettig, Pieffer & Johansen, PC, Cedar Rapids, IA, for Plaintiff.

John T. Murray, Michael P. Elkon, Seyfarth Shaw, Atlanta, GA, for Defendant.

## ORDER

LONGSTAFF, Chief Judge.

THE COURT HAS BEFORE IT plaintiff's application for attorney's fees and costs, submitted September 25, 2002. Defendant resisted the application on October 18, 2002, and plaintiff replied on October 28, 2002. The matter is fully submitted.

## I. BACKGROUND

On November 17, 2000, plaintiff, Janice Spearman, filed an amended complaint against defendant, Motorola Disability Income Plan, pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1001–1461. Plaintiff sought short-term and long-term disability benefits allegedly due under the terms of the plan. At the time plaintiff filed her complaint, she was awaiting the plan administrator's ruling on her request for an extraordinary third-level appeal of her claim for short-term disability benefits.[1] On May 11, 2001, defendant notified plaintiff that it would grant her extraordinary appeal and reverse all previous denials of plaintiff's short-term benefits claim. Defendant granted plaintiff short-term benefits in the amount of $3,212.10 on March 31, 2001.

While the federal action was still pending, plaintiff pursued long-term benefits through defendant's administrative channels. Defendant denied plaintiff's application for long-term disability benefits on September 18, 2001, and plaintiff appealed that administrative decision on November 20, 2001 (Level I Appeal).

On March 28, 2002, the Court dismissed plaintiff's short-term disability benefit claim as moot and stayed plaintiff's long-term benefits claim pending resolution of the administrative appeals process. Order, at 17–18. The Court also noted that, as of March 28, 2002, plaintiff had not yet received a timely response to her Level I appeal for long-term disability benefits. The Court therefore found that plaintiff could presume her Level I appeal was denied. *Id.* at 16, n. 9.

On July 9, 2002, plaintiff appealed defendant's denial of her Level I appeal (Level II Appeal). Defendant notified plaintiff that her long-term benefit claim had been resolved in her favor on July 26, 2002. On August 15, 2002, defendant awarded plaintiff $61,675.64 in long-term disability benefits.

Plaintiff ultimately received a total of $64,887.74 in disability benefits from defendants. She now seeks attorney's fees and costs for time billed from November 14, 2000 to September 3, 2002, in the amount of $20,625.00.[2] Defendant concedes that plaintiff may be entitled to "some minimal award" of attorney's fees, but argues that the Court should award only $2,731.25. Defendant's Resistance To Plaintiff's Application For Attorney's Fees, at 2, 7.

---

1. Plaintiff had previously exhausted the other administrative remedies under the plan with respect to her short-term benefits claim.

2. Plaintiff does not request fees for work completed prior to November 14, 2000, as she "concedes that this time was spent entirely in preparation of her extraordinary appeal of the Plan's denial of short-term disability benefits." Plaintiff's Application For Attorney Fees, at 3.

## II. APPLICABLE LAW AND DISCUSSION

### A. Law Governing Attorney's Fees Under ERISA

ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1), permits "the court in its discretion" to "allow a reasonable attorney's fee and costs of action to either party" in any action brought pursuant to subchapter I of ERISA. There is no longer a presumption that attorney fees should be awarded to a prevailing plaintiff. *Martin v. Ark. Blue Cross & Blue Shield*, 299 F.3d 966, 972 (8th Cir.2002). Instead, in determining whether a fee award is warranted, district courts should consider the following five factors:

(1) the degree of culpability or bad faith of the opposing party; (2) the ability of the opposing party to pay attorney fees; (3) whether an award of attorney fees against the opposing party might have a future deterrent effect under similar circumstances; (4) whether the parties requesting attorney's fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions.

*Id.* at 969 n. 4, 972. These factors are "general guidelines" and "are by no means exclusive or to be mechanically applied." *Martin*, 299 F.3d. at 972.

The Court will first consider whether defendant acted in bad faith or was otherwise culpable. Defendant argues that this factor weighs in its favor, because it "ultimately granted Spearman's claims for short-term and long-term disability benefits without need for the court to intervene." Defendant's Resistance to Plaintiff's Application for Attorney's Fees, at 4. The Court disagrees. Plaintiff tried to resolve her short-term claim out of court, but defendant repeatedly thwarted her attempts to obtain benefits through the administrative process. Defendant took nearly six months to determine whether plaintiff's short-term benefits should be granted, and it failed to follow established administrative procedures by not providing its administrative records upon request. Plaintiff's Application For Attorney's Fees, at 4. The Court finds that these facts, coupled with defendant's decision to award plaintiff benefits after this case ensued, show that defendant "exhibited some level of culpability" in its dealings with plaintiff. *Hamilton v. Bank of New York*, 1995 WL 447659, *5 (D.Del.1995) (finding that the "bad faith" factor weighed in favor of awarding fees where defendants initially denied benefits through administrative channels and were not willing to settle the claim until after plaintiff filed lawsuit). *See also, Schneider v. Wis. UFCW Unions and Employers Health Plan*, 13 F.Supp.2d 837, 840 (E.D.Wis.1998) (finding no evidence of actual bad faith, but noting that the Plan's "hard-nosed approach" leaned "inappropriately far towards protecting its assets to the detriment of a beneficiary"). Accordingly, the Court finds that this factor weighs in plaintiff's favor.

The Court finds the second factor weighs in favor of plaintiff, as defendant has the ability to pay attorney fees. The third factor, the deterrent effect, also militates in favor of an award of fees. By awarding fees, the Court will encourage defendant to act expeditiously and appropriately in the future. As the Eighth Circuit has acknowledged, "A plan that understands it may avoid attorney fees if it acts appropriately and quickly is more likely to do so." *Martin*, 299 F.3d at 973.

The Court will next consider the fourth factor, the benefit conferred on other participants and beneficiaries by an award of fees in this case. Plaintiff does not contend that she represented a broad class of beneficiaries, or that her claim involved a

"significant legal question regarding ERISA itself." *Martin*, 299 F.3d at 969 n. 4. Instead, plaintiff contends that the fourth factor weighs in her favor, because a fee award will encourage defendant not to delay in making decisions in the future. Plaintiff's Application For Attorney Fees, at 5. This argument applies to the third factor, which considers deterrent effects, but it is not relevant to the fourth factor. As plaintiff's claims are solely personal, the Court finds the fourth factor weighs in favor of defendant.

Finally, the Court will consider the fifth factor, "the relative merits of the parties' positions." *Id.* After this case was filed, defendant retracted from its previous decisions and found that plaintiff was entitled to short-term disability benefits. The fact plaintiff ultimately won her extraordinary appeal for short-term benefits shows that her position on that issue had merit. *See Hamilton*, 1995 WL 447659, at *6 (fifth factor weighed in plaintiff's favor where plaintiff received the relief she sought through settlement after the case had been filed). Plaintiff also sued for long-term benefits before exhausting her administrative remedies on that claim. Plaintiff's federal claim for long-term disability was procedurally premature at the time it was filed.[3] However, the Court finds that plaintiff likely would not have filed her long-term benefits claim before exhausting administrative remedies had she not been forced to bring her short-term benefits claim to court. Therefore, the Court will not allow the premature nature of the long-term benefits claim to significantly impact its initial determination of whether any attorney fees should be awarded. *See Martin*, 299 F.3d at 972 (advising that the five attorney fee factors are not to be mechanically applied).

Considering the above-mentioned factors, the Court finds that an award of attorney's fees is warranted. The question remaining is what fee to award. Plaintiff requests fees in the amount of $20,625.00. Defendant argues that this figure is excessive, because it includes the following: (1) fees incurred for her administrative claims and appeals; (2) fees incurred after defendant granted plaintiff's administrative claim for short-term disability benefits; and (3) fees for time entries that are insufficiently specific. The Court will address these arguments in turn.

■ Defendant first argues that plaintiff cannot recover fees for time billed exhausting administrative remedies. Although the Eighth Circuit has not addressed the issue, three circuit courts have held that the time spent exhausting administrative remedies in an ERISA action is not recoverable. *See Rego v. Westvaco Corp.*, 319 F.3d 140, 150 (4th Cir.2003) ("[W]e agree with our sister circuits that have held ERISA attorney's fees to be categorically unavailable for expenses incurred while exhausting administrative remedies."); *Anderson v. Procter & Gamble Co.*, 220 F.3d 449, 456 (6th Cir.2000) ("ERISA does not authorize recovery of attorney's fees for work performed during the administrative exhaustion phase of a benefits proceeding."); and *Cann v. Carpenters' Pension Trust Fund for Northern Cal.*, 989 F.2d 313, 316 (9th Cir.1993) (same). *But see Hedley–Whyte v. Unum Life Insurance Co. of America*, 1996 WL 208492, *7 n. 5 (1996 D. Mass) (rejecting the view that pre-litigation expenses are not recoverable). This Court believes the Eighth Circuit would agree with the other circuit courts that have addressed the issue. Accordingly, the Court finds that plaintiff cannot recover attorney fees for

---

**3.** The Court notes that while the claim was untimely, the substance of plaintiff's long-term benefits claim had merit. Although defendant denied her original application and rejected her Level I appeal, it ultimately awarded her the long-term benefits.

efforts expended on plaintiff's administrative quest for benefits.

Plaintiff argues that even if the Court adopts the view of the Fourth, Sixth and Ninth circuits, she is still entitled to fees for time spent obtaining long-term benefits. Plaintiff contends that *Anderson* and *Cann* are distinguishable, because in those cases the courts denied fees for work relating to administrative proceedings that took place *prior* to the filing of the lawsuit. In contrast, plaintiff seeks fees for expenses incurred relating to administrative proceedings for long-term benefits that took place *after* her lawsuit was filed. This distinction may be relevant under some circumstances, but it carries little force in the case at bar. Plaintiff incurred fees for administrative work after her suit was filed, because she failed to exhaust her administrative remedies for her claim for long-term disability benefits. Although the Court understands why plaintiff may have been inclined to file her long-term benefits claim along with her short-term benefits claim, she was legally required to exhausted her administrative remedies before filing her long-term benefits claim in court. *See* March 28, 2002 Order, at 12–15. The Court is unwilling to award plaintiff fees for efforts expended navigating administrative channels that took place after litigation commenced, where plaintiff failed to previously exhaust administrative remedies as required.

Defendant lists a number of entries in plaintiff's fee application that it believes involved work done during the administrative exhaustion phase of the parties' dispute.[4] The total fee for these entries is $5,337.50. Because some of these entries are vague, the Court is unable to determine whether they all pertained to administrative efforts for long-term benefits. *See* Plaintiff's Itemized Statement of Attorney Fees and Expenses. The Court will allow Plaintiff ten days from the filing of this order to clarify whether any of these entries pertained to administrative efforts. If these entries all pertained to administrative efforts, plaintiff's request for attorney fees will be reduced by $5,337.50.

■ Defendant next contends that plaintiff is not entitled to any fees that accrued after May 11, 2001, the date on which it informed plaintiff her extraordinary appeal for short-term benefits would be granted. Defendant's Resistance to Plaintiff's Application for Attorney's Fees, at 7. According to defendant, "Once short term benefits were granted, the process worked efficiently and proceeded apace." Therefore, defendant argues that there is no justification for awarding fees beyond that date. *Id.* Defendant claims that, at a minimum, plaintiff should not recover fees for her "pointless and unsuccessful opposition" to defendant's motion to strike plaintiff's expert designation and motion for summary judgment. Defendant's Resistance to Plaintiff's Application for Attorney's Fees, at 7.[5]

---

**4.** Defendant contests the following entries: June 18, 2001 (first two entries); June 19, 2001 (second entry); June 22, 2001 (second entry); June 28, 2001 (second entry); July 13, 2001; all entries between August 20, 2001 and September 5, 2001; September 20, 2001; all entries from October 2, 2001 through October 8, 2001; October 29, 2001; November 6, 2001; November 12, 2001; November 19, 2001; January 11, 2002; all entries between January 21, 2002 and the first entry for March 26, 2002; all entries between April 1, 2002 and the first entry on June 20, 2002; and the second and third entries on June 21, 2002. Defendant's Resistance to Plaintiff's Application for Attorney's Fees, at 9.

**5.** Defendant notified plaintiff that it would award her short-term benefits on May 11, 2001, and the benefits were granted on May 31, 2001. Defendant filed a motion to strike plaintiff's expert designation on November 8,

The Court disagrees and finds that plaintiff is entitled to fees related to her civil action that accrued after May 11, 2001, including fees for work done in resistance to defendant's motion to strike plaintiff's expert and motion for summary judgment. Contrary to defendant's belief, plaintiff's efforts were not "pointless" after May 11, 2001. Plaintiff's counsel had a duty to provide zealous representation. In doing so, she resisted defendant's motion to strike plaintiff's expert and its motion for summary judgment. Although plaintiff was ultimately unsuccessful in opposing these motions,[6] plaintiff presented plausible legal arguments in support of her position. The Court cannot say that plaintiff's litigation strategy was imprudent or unpredictable. Having forced plaintiff to resort to court, defendant should have expected such resistance.[7]

 Defendant next argues that some of the billing records submitted by plaintiff are vague. A party seeking to recover attorney's fees must provide billing records that are sufficiently specific to enable the Court to determine whether the tasks performed were necessary to the litigation. "Incomplete or imprecise billing records preclude any meaningful review by the district court of the fee application for excessive, redundant, or otherwise unnecessary hours and may make it impossible to attribute a particular attorney's specific time to a distinct issue or claim." *H.J., Inc. v. Flygt Corp.*, 925 F.2d 257, 260 (8th Cir.1991) (internal quote omitted).

Plaintiff's fee request contains a number of time entries for communications between plaintiff's attorney and other persons that fail to specify the nature or subject of the communications.[8] The Court is unable to determine whether these time entries relate to the civil litigation or the administrative process. This distinction is critical in light of the Court's ruling that plaintiff cannot recover costs for time billed on the administrative phase of her long-term disability claim. The Court will give plaintiff's counsel ten days to establish that the challenged time entries relate to the civil litigation.[9]

2001, and a motion for summary judgment on November 23, 2001. Plaintiff resisted the motion to strike and the motion for summary judgment on November 26, 2001, and December 31, 2001, respectively.

6. Before filing its motion for summary judgment, defendant reversed its three earlier decisions and granted plaintiff short-term benefits. Thus, at the time the summary judgment motion was filed, plaintiff had received all the short-term benefits allowed under the plan. This rendered plaintiff's claim moot, because the Court could not order any further relief on the claim, and because the claim did "not fall within the exception to the mootness doctrine for claims that are capable of repetition, yet evading review." Order at 10. Consequently, the Court dismissed plaintiff's short-term benefits claim. *Id.* at 11–12. The Court stayed plaintiff's long-term benefits claim, because plaintiff had not yet exhausted the required administrative channels. (Order at 15).

7. The Court emphasizes that plaintiff initially tried to resolve her short-term benefit dispute through defendant's administrative channels. It was only after defendant repeatedly denied her request for short-term benefits that plaintiff sought relief in federal court.

8. Defendant contends the following entries are insufficiently specific: December 6, 2000; January 17 and 18, 2001; February 2, 5, 16, 19, 20, 22, 24, and 26, 2001: March 7, 20, and 30, 2001; April 9 and 11, 2001; May 24, 2001; June 7, 8, 19, 21, 25, and 28, 2001: July 2, 10, and 17, 2001; August 8, 14, 27, and 29, 2001: September 4, 5, 7, 20, and 22, 2001; October 15 and 30, 2001; November 8, 2001; December 14 and 20, 2001; January 4, 11, 14, and 28, 2002; February 21, 2002; March 14, 2002; April 2, 3, and 9, 2002; May 3 and 20, 2002; June 14, 17, 21, 24, and 27, 2002; July 16 and 28, 2002; August 2 and 6, 2002; and September 3, 2002.

9. Plaintiff's counsel argues that some of the time entries challenged for vagueness involve communications that fall within the scope of attorney-client privilege. The Court believes that plaintiff's counsel can provide additional

■ In addition to determining the number of hours for which plaintiff can recover fees, the Court must also determine whether plaintiff's hourly rate is reasonable. *H.J. Inc.*, 925 F.2d at 260. In determining a reasonable rate, the court considers the experience of the attorney, the years of her practice and expertise, the risks of litigation, the responsibility undertaken, and the amount of fees that would be reasonable to charge a prevailing plaintiff in similar circumstances. *Grunin v. Int'l. House of Pancakes*, 513 F.2d 114, 128 (8th Cir.1975). "The Court may consider the [attorney's] regular hourly rates as well as the prevailing community rate for similar work." *H.J. Inc.*, 925 F.2d at 260.

■ Plaintiff's counsel submitted an hourly rate of $125. She has been practicing law for ten years and has experience in employee benefits litigation. The Court finds that this rate is no greater than the community average and is reasonable.

### III. CONCLUSION

The Court finds that plaintiff is entitled to an award of attorney fees for work done in the litigation phase of this dispute. However, the Court finds plaintiff is not entitled to any fees for service provided for the exhaustion phase of her request for long-term benefits. Plaintiff has ten days from the filing of this order to supplement her Itemized Statement of Attorney Fees and Expenses. Using $125 as the hourly rate, the Court will then calculate the appropriate amount of fees to award.

information to enable the Court to determine whether the entries related to the administrative process, without breaching her attorney-client privilege. The Court also suspects plaintiff would be willing to waive her attorney-client privilege in order to obtain the requested fees.