# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3783

_____

| | | |
|---|---|---|
| Peter LaSalle, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Mercantile Bancorporation, Inc. | * | |
| Long Term Disability Plan, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: June 13, 2007
Filed: August 17, 2007

_____

Before LOKEN, Chief Judge, ARNOLD and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Peter LaSalle appeals the district court's[1] orders granting summary judgment and denying discovery regarding the termination of his disability benefits under the Employee Retirement Income Security Act ("ERISA"). We affirm.

_____

[1] The Honorable Frederick R. Buckles, United States Magistrate Judge for the Eastern District of Missouri, sitting by consent of the parties pursuant to 28 U.S.C. § 636(c).

LaSalle began working for Mercantile Bancorporation, Inc. ("Mercantile") in 1995. In 1998, he developed a liver disease that required two liver transplants. He received disability coverage through Mercantile's Long-Term Disability Plan ("Mercantile LTD Plan"), which was sponsored by the Mercantile Welfare Plan Association ("Mercantile Welfare Plan"). This plan provided coverage for two years if he was unable to perform "the duties of his job," and until age sixty-five if he was "unable to perform any work for which he is or may be trained." (Appellant's App. 120).

LaSalle received disability benefits based on physical limitations until June 2001. At that time, an independent medical examination by Dr. Paul Detrick found that LaSalle suffered from no physical or cognitive limitations that would preclude him from working, but that he suffered from psychiatric symptoms that would interfere with his ability to work. In early 2002, LaSalle began treatment for depression and anxiety with Dr. Steve Stromsdorfer, a psychiatrist. LaSalle continued to receive long-term disability ("LTD") benefits through early 2004, based on a finding of mental illness rather than physical limitations.

During this time, Mercantile merged first with Firstar Corporation and then with U.S. Bancorp ("U.S. Bank"). After those mergers, the Mercantile Welfare Plan, which sponsored the Mercantile LTD Plan, ceased to exist. The U.S. Bank Long-Term Disability Plan ("U.S. Bank LTD Plan") was extended to cover participants of the old Mercantile Plan. U.S. Bank was the plan administrator, and it employed Hartford Benefits Management Services ("Hartford") as the claims administrator for the disability plan. The U.S. Bancorp LTD Claim Subcommittee ("U.S. Bank LTD Subcommittee") was the final reviewing body under the U.S. Bank Plan.

Hartford began a review of LaSalle's disability benefits in 2004. In the first-level review, Dr. Robert Denney, a psychologist, performed an independent medical examination. Dr. Denney found that LaSalle had no substantial mental deficits that would prevent him from performing his old job or any other work. He believed that LaSalle "may have been attempting to appear disingenuously impaired" and that his performance "meets the criteria for probable malingered neurocognitive dysfunction." (Appellant's App. at 113-14). Dr. Denney noted LaSalle did his family's income taxes, paid the bills, traded stocks on the Internet, shopped for groceries, cooked family meals, and played eighteen holes of golf multiple times per week. The doctor said LaSalle "may have some difficulties related to his general medical condition," but said "there is no way I could conclude he has substantive impairment." (Appellant's App. at 116).

Dr. Stromsdorfer, LaSalle's treating physician, reviewed the report and observed that there was a discrepancy between his records and Dr. Denney's assessment. He also noted that Dr. Denney did not diagnose depression or anxiety. Dr. Stromsdorfer acknowledged that he was not a psychologist and could not address the validity of Dr. Denney's test findings, and then recommended that LaSalle's capabilities be assessed through participation in a vocational rehabilitation program. Dr. Denney replied that there were not enough objective indicators to make a diagnosis of depression or anxiety, and reiterated his view that LaSalle could return to work in some capacity within the financial industry with a short period of rehabilitation.

After reviewing records from Dr. Denney and Dr. Stromsdorfer, evaluations performed by Dr. Detrick in 2001, an "employability analysis report" prepared by a rehabilitation clinical case manager, and other materials in LaSalle's claim file, Hartford denied LaSalle's claim for disability benefits beyond effective May 31, 2004. LaSalle filed an administrative appeal, and in conducting that review, the U.S. Bank LTD Subcommittee referred LaSalle's file for review by two other doctors.

Dr. Milton Jay, a consulting neuropsychologist, reviewed the medical records and spoke with Dr. Jeffrey Crippin, a hepatologist and one of LaSalle's treating physicians. Dr. Jay found no evidence of cognitive limitations that would inhibit LaSalle's capacity to work. He further reported that Dr. Crippin said he observed no significant cognitive problems that would limit LaSalle. Dr. Maureen Smith, a psychiatrist, also reviewed the records and spoke with Dr. Stromsdorfer. Dr. Smith found no evidence that LaSalle's functioning in the workplace would be impaired by cognitive, mental, or emotional problems if he were motivated to work.

LaSalle submitted a report from Dr. F. Timothy Leonberger, a clinical neuropsychologist who conducted a psychological consultation with LaSalle in September 2004. Dr. Leonberger took some issue with Dr. Denney's conclusion that LaSalle was malingering, observing that Dr. Denney used an "unpublished test" and a "test that is infrequently used" to measure malingering. Dr. Leonberger ultimately concluded that LaSalle had suffered a cognitive decline as a result of his medical problems over the years, and that he did "not appear to be capable of performing the type of work he has done previously." (Appellant's App. 60). Drs. Jay and Smith reviewed Dr. Leonberger's report, but they found nothing in it that changed their conclusions. Dr. Jay, for example, responded that the so-called "unpublished" test employed by Dr. Denney was in fact "well published as legitimate cognitive tests and well known and used in neuropsychological practice." (Appellant's App. 41-42). After considering the opinions of multiple licensed physicians, the U.S. Bank Subcommittee advised LaSalle that "it appears that you are capable of performing not only your own occupation, but any work for which you are or may be trained." (*Id*. at 42). Accordingly, the subcommittee upheld the decision to deny disability benefits beyond May 31, 2004.

## II.

LaSalle brought this action under section 502(a) of ERISA, 29 U.S.C. § 1132(a), claiming that his LTD benefits were wrongfully terminated. We review the district court's grant of summary judgment *de novo*, viewing the record in the light most favorable to the nonmoving party. *Seman v. FMC Corp. Ret. Plan*, 334 F.3d 728, 732 (8th Cir. 2003).

When an ERISA plan gives the plan administrator discretionary authority to determine eligibility for benefits, we generally review the administrator's decision for an abuse of discretion. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Under this standard, we consider whether the administrator's decision is supported by such relevant evidence that a reasonable mind might accept as adequate to support such a conclusion. *King v. Hartford Life & Accident Ins. Co.*, 414 F.3d 994, 999 (8th Cir. 2005) (en banc).

Even where the administrator has discretionary authority, however, we may review with greater scrutiny if a plaintiff shows that a "serious procedural irregularity existed," which "caused a serious breach of the plan trustee's fiduciary duty to the plan beneficiary." *See Buttram v. Cent. States, S.E. & S.W. Areas Health & Welfare Fund*, 76 F.3d 896, 900 (8th Cir. 1996). "For heightened review to apply, a beneficiary claiming procedural irregularity must show that the plan administrator, in the exercise of its power, acted dishonestly, acted from an improper motive, or failed to use judgment in reaching its decision." *Neumann v. AT&T Comm., Inc.*, 376 F.3d 773, 781 (8th Cir. 2004). The alleged procedural irregularity must have some connection to the substantive decision reached by the administrator, and give rise to "serious doubts" about whether the result reached was the product of "an arbitrary decision" or "whim," before we vary from the usual standard of review. *Chronister v. Baptist Health*, 442 F.3d 648, 654 (8th Cir. 2006) (internal quotations omitted).

LaSalle submits a series of alleged procedural irregularities that he believes warrant closer review of the administrator's actions. He asserts that according to the terms of the Mercantile Plan, the General American Life Insurance Company, not Hartford, should perform the first-level review; that the Mercantile Welfare Plan Committee, rather than the U.S. Bank LTD Subcomittee should perform the second-level review; and that a physician, rather than a psychologist, should conduct the independent medical examination. Each of these arguments is based on a view that LaSalle's claim should have been processed under the Mercantile LTD Plan, as though the U.S. Bank acquisition had never occurred. We reject this premise.

The Mercantile Welfare Plan was established in 1981 to provide life, health, disability, and other benefit plans for eligible employees, and these plans were to be administered by the Mercantile Welfare Plan Committee. In 1984, the Mercantile LTD Plan was adopted under the sponsorship of the Mercantile Welfare Plan. After Mercantile merged with Firstar and then U.S. Bank, U.S. Bank became the sponsor of the Mercantile Welfare Plan, and the Mercantile Welfare Plan was terminated as of December 31, 2001.

The summary plan description ("SPD") describing the U.S. Bank LTD Plan speaks to the eligibility of former employees of Mercantile for benefits after the merger: "All other employees who are receiving LTD benefits from acquired companies will continue to receive benefits *while eligible under the terms of the plan of that acquired company at the time of the acquisition*." (Appellant's App. 195) (emphasis added). LaSalle acknowledges that Mercantile was an acquired company, having merged with Firstar and then U.S. Bank. He contends, however, that this language from the SPD essentially obliges the U.S. Bank Plan to perpetuate the former Mercantile LTD Plan in its entirety, and to maintain the same committee structure, plan administrator, and procedures used by the former plan. Aside from the impracticality of such a system, given that Mercantile and the Mercantile Welfare Plan ceased to exist as a result of the mergers, LaSalle's interpretation is unwarranted by

the plain language of the SPD. The evident meaning of the sentence in question is that former Mercantile employees remain eligible for benefits as long as they meet the eligibility requirements of the Mercantile LTD Plan as it existed at the time of the acquisition.[2]

The SPD for the U.S. Bank LTD Plan lays out a thorough process for the review of claims. First, the claims administrator, Hartford, orders an independent medical examination, from which Hartford makes an initial determination of eligibility for benefits. In the case of an adverse determination, the claimant may request a review of this determination by the Subcommittee. If the initial determination was based on medical judgment, the Subcommittee consults with additional medical professionals for independent review of the IME. Claimants have the right to submit additional information, and the final determination is made by members of the Subcommittee who were not involved in the initial adverse determination. This process is fully laid out in the U.S. Bank Plan, and it appears to have been dutifully followed in LaSalle's case. We do not believe LaSalle has shown a procedural irregularity in the handling of LaSalle's claim, let alone any that is so "egregious that [it] might trigger a total lack of faith in the integrity of the decision making process." *See Chronister*, 442 F.3d at 655 (internal quotations omitted).

---

[2]LaSalle also complains that when he initially requested copies of all documents used by Hartford in making its determination on his eligibility for benefits, the claims administrator furnished only a copy of the Mercantile LTD Plan, not the U.S. Bank Plan. He asserts that Hartford's failure to provide the U.S. Bank Plan violated 29 U.S.C. § 1024(b)(4). That section, by its terms, however, places obligations on the *plan* administrator (i.e., U.S. Bank), not the *claims* administrator (i.e., Hartford), and even if the plan administrator had failed to comply with its obligations, the remedy for such a violation is not to render the applicable plan ineffective. *See* 29 U.S.C. § 1132(c)(1). We see no basis to conclude, moreover, that LaSalle was prejudiced by his delayed receipt of the correct plan documents.

Like the Mercantile Plan, the U.S. Bank Plan gives the plan administrator discretion to interpret and apply the terms of the plan. U.S. Bank or its delegee has "sole authority, discretion and responsibility to interpret and apply the terms of the plans and to determine all factual and legal questions under the plans, including eligibility and entitlement to benefits." (Appellant's App. 214). We therefore review the administrator's decision under an abuse of discretion standard.

We agree with the district court that the administrator did not abuse its discretion. The Subcommittee was tasked with determining whether LaSalle was still "disabled" within the meaning of the eligibility requirements of the Mercantile Plan. Under that plan, "a Participant must be unable, for the first two years of a disability, to perform the duties of his job because of an illness or injury, and after two years of disability must be unable to perform any work for which he is or may be trained." (Appellant's App. 120). Because LaSalle had been on LTD since 1998, his eligibility turned on the second clause.

The Subcommittee had sufficient evidence to support a reasonable conclusion that LaSalle was able to work. Dr. Denney found LaSalle's performances on memory tests strongly indicative of malingering. On one test, his overall performance was over seven standard deviations below the average of patients with severe brain damage. According to Dr. Denney, "[s]uch a score is statistically impossible for an individual giving their best appropriate efforts – especially an individual who was not obviously, and grossly, impaired in their activities of daily living." (Appellant's App. 110). While Dr. Denney found LaSalle may have some "very mild cognitive difficulties," he opined that LaSalle's performance met the criteria for "probable malingered neurocognitive dysfunction." (*Id.* at 114). Dr. Denney found no substantial impairment to LaSalle's ability to perform any occupation, noting that LaSalle engages in a number of physically and mentally demanding tasks outside of work (including regular rounds of golf and trading stocks on the Internet) that are generally inconsistent with an inability to perform "any occupation." The two doctors

consulted during the administrative appeal likewise opined that LaSalle was able to perform some work.

The Subcommittee also considered the evaluations of two of LaSalle's own doctors, Dr. Stromsdorfer and Dr. Leonberger, but the plan was not required by ERISA to give special deference to their opinions. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 829-31 (2003). Moreover, while these doctors took issue with some of the specific findings of the doctors retained by the plan, they did not provide a strong contrary opinion on the ultimate issue. Dr. Leonberger did not believe LaSalle was malingering, but he found only moderate impairment in LaSalle's activities of daily living. His belief that LaSalle "does not appear to be capable of performing the type of work *he has done previously*," (Appellant's App. 60) (emphasis added), does not address the dispositive question whether he could perform *any work* for which he could be trained. He noted that LaSalle performed various physical tasks around the home, and was able to drive, shop, and handle his own money. Similarly, Dr. Stromsdorfer did not say that LaSalle was totally disabled, and advised Dr. Smith that "I don't believe he has no work capacity. There are certain jobs he could probably do." (*Id*. at 97). Based on this record as a whole, the Subcommittee's determination that LaSalle was not disabled is supported by substantial evidence.

LaSalle also challenges the district court's refusal to compel discovery of internal notes or documents regarding the administrator's decision-making process and the relationship between the U.S. Bank LTD Plan Subcommittee and the doctors who were consulted about LaSalle's claim. We review discovery rulings for abuse of discretion. *Ferrari v. Teachers Ins. & Annuity Ass'n*, 278 F.3d 801, 807 (8th Cir. 2002). Review of a plan administrator's decision is typically conducted on the administrative record created during the decision making process, *see id.*, and LaSalle has not shown good cause why discovery was necessary to gather evidence that would be material to judicial review. The written decisions of Hartford and the U.S. Bank

LTD Subcommittee were available for review, and an administrator's reliance on doctors whom it retains does not amount to the sort of procedural irregularity that might affect our standard of review. *See Kolosky v. UNUM Life Ins. Co.*, 183 F. App'x 607, 609-10 (8th Cir. 2006) (per curiam). Accordingly, we discern no abuse of discretion in the district court's ruling on discovery.

\*  \*  \*

The judgment of the district court is affirmed.

_____