# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

Nos. 09-2510/2890

———————

| | |
|---|---|
| Cindy Rote, | * |
| | * |
| Appellee, | * |
| | * Appeals from the United States |
| v. | * District Court for the |
| | * Southern District of Iowa. |
| Titan Tire Corporation, | * |
| | * [PUBLISHED] |
| Appellant. | * |

———————

Submitted: February 8, 2010
Filed: July 28, 2010

———————

Before LOKEN, Chief Judge,[1] GRUENDER and BENTON, Circuit Judges.

———————

PER CURIAM.

Cindy Rote has been seeking long-term disability benefits from Titan Tire Corporation ("Titan") for over eight years. Rote began working at Titan's plant on November 7, 1984, and joined the union. In 1997, Rote had surgeries to replace the joints in both of her thumbs. In April 1998, while she was still recovering from surgery, the union went on strike. The strike ended in October 2001. Rote wanted to return to work at the end of the strike, and Titan asked Dr. Anthony Sciorrotta to

———————

[1]The Honorable James B. Loken stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on March 31, 2010. He has been succeeded by the Honorable William Jay Riley.

evaluate Rote's ability to return to work. Dr. Sciorrotta restricted Rote to jobs that did not require frequent pinching with more than five pounds of force and did not involve kneeling or squatting. Titan informed Rote that there were no jobs compatible with those restrictions available at the plant.

Although Rote had difficulty obtaining the necessary paperwork from Titan, she eventually filed an application for long-term disability benefits. Dr. Scott Neff, who performed Rote's joint replacement surgeries, evaluated Rote and stated that "her restrictions have not changed, and consequently, based on the employer[']s decision, she is considered disabled." Rote submitted Dr. Neff's evaluation with her disability application. Under Titan's disability plan, an employee is eligible for benefits if she is "permanently and totally disabled . . . so as to be prevented thereby from being physically able to perform the work of any classification in the local plant." Titan, as the administrator of its own ERISA plan, denied Rote's application for disability benefits, stating only that she did "not qualify as 'disabled' under the plan."

Rote filed suit against Titan, challenging the denial of her application. The district court vacated Titan's denial of benefits, holding that the decision was conclusory and lacked much of the explanation required under 29 C.F.R. § 2560.503-1. The court remanded the matter to the administrator for reevaluation of Rote's claim. *See Abram v. Cargill, Inc.*, 395 F.3d 882, 886 (8th Cir. 2005) ("A reviewing court must remand a case when the court or agency fails to make adequate findings or explain the rationale for its decision.").

On remand, Rote submitted additional evidence to support her claim for disability benefits. In particular, Rote's attorney wrote to both Dr. Neff and Dr. Sciorrotta. Her attorney's letter noted that "[a] question has now arisen as to whether the restrictions you imposed . . . were only temporary or were intended to be permanent," and then asked whether the doctors recommended that Rote "continue to follow these [work] restrictions indefinitely." Both doctors responded affirmatively

with respect to the restrictions on pinching and gripping.  Dr. Sciorrotta explained, "With respect to whether I would recommend that Ms. Rote continue to follow these restrictions indefinitely, I would say that regarding her hands, she should continue with those restrictions since they were outlined by Dr. Neff and were felt to be of a permanent nature."[2]

Titan again denied Rote's application, claiming that because the restrictions on her physical activity were only to be followed "indefinitely," Rote was not "permanently" disabled and therefore did not qualify for long-term disability benefits under the plan.  Rote requested a formal review of the decision and included in her request a letter from Dr. Neff clarifying that he intended Rote's restrictions to be "permanent."  Titan indicated that it would be "consulting with an independent medical expert regarding Ms. Rote's appeal," but it later denied Rote's claim.  After Rote made several requests for whatever information the independent medical expert provided, she eventually learned that he provided no written information.

Rote again filed suit, challenging Titan's denial of her application for long-term disability benefits.  The district court[3] held that Titan abused its discretion in denying Rote's application and reversed the decision, ordering Titan to pay Rote disability benefits.  The district court also awarded Rote attorney's fees in the amount of $13,675, which included fees incurred from May 18, 2004, the date Rote filed her original suit in the district court.  Titan appeals both decisions.

Like the district court, we review the plan administrator's decision for an abuse of discretion because the plan gives Titan discretionary authority to determine

---

[2]Dr. Sciorrotta also opined that Rote's restrictions related to kneeling and squatting need not be continued indefinitely.

[3]The Honorable John A. Jarvey, United States District Judge for the Southern District of Iowa.

eligibility for benefits.  *See LaSalle v. Mercantile Bancorporation, Inc. Long Term Disability Plan*, 498 F.3d 805, 808-09 (8th Cir. 2007).[4]  "Under this standard, we consider whether the administrator's decision is supported by such relevant evidence that a reasonable mind might accept as adequate to support such a conclusion." *Id.* at 809.  "[W]e ask whether the decision to deny . . . benefits was supported by substantial evidence, meaning more than a scintilla but less than a preponderance." *Schatz v. Mut. of Omaha Ins. Co.*, 220 F.3d 944, 949 (8th Cir. 2000).

We agree with the district court that Titan abused its discretion in denying Rote's application for long-term disability benefits.  The parties do not dispute that Rote qualifies as "disabled" under the plan and that her disability is "total."  Titan's sole reason for denying Rote's application was that she had not shown her disability to be "permanent."  To reach that conclusion, Titan interpreted the doctors' letters as suggesting that Rote's restrictions are not permanent, focusing on the use of the term "indefinitely" and relying on one dictionary definition of "indefinite."  *See* Black's Law Dictionary 769 (6th ed. 1990) (noting that the "[t]erm is more synonymous with temporary than with permanent").  However, the intended meaning of "indefinitely" —that the restrictions are permanent—was clear from the context of the letters that Rote's attorney and the doctors exchanged.  Rote's attorney first informed the doctors that there was a question about "whether the restrictions . . . were only temporary or were intended to be permanent," before asking whether the restrictions should be continued "indefinitely."  The doctors' affirmative responses, when read in context, show that the restrictions are permanent, not temporary.  Moreover, the doctors resolved any doubt about their intent in their subsequent letters.  Dr. Neff responded

[4]"[T]he financial conflict of interest present whenever an insurer both evaluates claims for benefits and pays granted claims . . . does not change the standard of review but *may* be relevant in determining whether the insurer abused its discretion." *Jones v. Unum Provident Corp.*, 596 F.3d 433, 438 (8th Cir. 2010).  Because we would find an abuse of discretion in Titan's denial of benefits even without considering this conflict of interest, we need not elaborate on the standard of review applicable here.

affirmatively to a later question from Rote's attorney asking whether the work restrictions were "intended to be permanent restrictions." And Dr. Sciorrotta wrote that Rote's restrictions "were felt to be of a permanent nature." Notwithstanding Titan's strained reading of the responses the doctors gave to the question whether the restrictions should be continued "indefinitely," it is plain that the doctors have consistently maintained that Rote's work restrictions are permanent. Under these circumstances, we conclude that Titan's decision denying Rote's application for disability benefits was not based on "substantial evidence." *See Schatz*, 220 F.3d at 949. We therefore affirm the district court's decision holding that Titan abused its discretion.[5]

Turning to the attorney's fee award, Titan first argues that an award of any attorney's fees is inappropriate here. "This Court will not overturn a District Court's decision regarding attorneys' fees absent an abuse of discretion." *Sheehan v. Guardian Life Ins. Co.*, 372 F.3d 962, 968 (8th Cir. 2004). When examining whether to award attorney's fees in an ERISA case, courts are to consider:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties could deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal [question] regarding ERISA itself; and (5) the relative merits of the parties' positions.

---

[5]Titan also argues that we should evaluate its denial of benefits using the factors enumerated in *Finley v. Special Agents Mutual Benefit Ass'n*, 957 F.2d 617, 621 (8th Cir. 1992). However, this case does not involve interpretation of the plan's terms as in *Finley*; the definition of "permanently disabled" is not in dispute. Therefore, *Finley* is not applicable.

*Lawrence v. Westerhaus*, 749 F.2d 494, 496 (8th Cir. 1984) (per curiam). However, "the 'five factors' set forth by *Westerhaus* are by no means exclusive or to be mechanically applied." *Martin v. Ark. Blue Cross & Blue Shield*, 299 F.3d 966, 972 (8th Cir. 2002) (en banc).

We find no abuse of discretion in the district court's decision to award attorney's fees. As the district court noted, "[t]his was not a close case." Titan relied on a hypertechnical reading of the medical evidence and ignored the doctors' attempts to clarify their opinions. Additionally, there was evidence that Titan attempted to frustrate Rote's ability to move the claims process forward by repeatedly ignoring her requests for documents. While no evidence has been presented regarding the second or third factors, and while the fourth factor favors Titan in that Rote's suit will only benefit her own application for benefits, we nonetheless conclude that in light of all the "relevant considerations," *id.*, the weight of the first and fifth factors is sufficient here to show that the district court did not abuse its discretion in awarding attorney's fees.

Finally, we turn to Titan's argument that, even if an award of some attorney's fees were appropriate, the fees incurred during Rote's first suit and during the administrative proceedings occasioned by the district court's remand order should not have been awarded. The statute governing attorney's fee awards under ERISA provides: "In any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). According to Titan, the first suit and the subsequent administrative proceedings were "pre-litigation" and not part of the current "action" within the meaning of the statute. Therefore, Titan argues, the district court may not award fees incurred before the second lawsuit. Whether attorney's fees incurred during the earlier proceedings are recoverable is a question "of statutory interpretation, which we review *de novo*." *Parke v. First Reliance Standard Life Ins. Co.*, 368 F.3d 999, 1010 (8th Cir. 2004).

As an initial matter, Titan incorrectly portrays the relationship between Rote's first and second suits, asserting that they were separate cases and therefore separate actions such that Rote cannot now recover fees incurred during the first suit. In *Gerhardt v. Liberty Life Assurance Co. of Boston*, 574 F.3d 505 (8th Cir. 2009), we dismissed an appeal from a district court's order remanding a benefits claim to the administrator for further proceedings, *id.* at 506-07. We held that this was not a final order under 28 U.S.C. § 1291, even though the docket listed the case as terminated and the district court did not explicitly note it was retaining jurisdiction. *Gerhardt*, 574 F.3d at 511. The district court's initial remand order here is nearly identical to the one in *Gerhardt*, and for the reasons outlined in *Gerhardt*, *see id.* at 511-12, we reject Titan's claim that the district court did not retain jurisdiction over Rote's claim. Because the two suits were the continuation of one "action," Rote can recover fees incurred during the first suit.

Since Rote's two suits are part of the same "action," this case is distinguishable from those on which Titan relies, *Parke* and *Spearman v. Motorola Disability Income Plan*, 279 F. Supp. 2d 1047 (S.D. Iowa 2003). In *Parke*, we held that attorney's fees incurred during pre-litigation proceedings before the plan administrator could not be recovered, even though those proceedings were necessary to exhaust a benefits claim, because that pre-litigation work was not part of the "action" within the meaning of the statute. 368 F.3d at 1011. The pre-litigation administrative proceedings at issue in *Parke* were "neither necessary for enforcement of a judicial decree nor so closely connected to the resolution of the judicial action as to fall within the scope of [*Sullivan v. Hudson*, 490 U.S. 877 (1989)] and [*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546 (1986)]," cases where the Supreme Court awarded attorney's fees under other statutes for work performed during administrative proceedings. *Parke*, 368 F.3d at 1011. Unlike the fees at issue in *Parke*, the disputed fees here were not incurred pre-litigation, but rather after a court-ordered remand. We are also not persuaded that this case should be resolved identically to *Spearman*, where the district court refused to award attorney's fees

incurred during a court-ordered remand to allow the plaintiff to administratively exhaust her ERISA claim. 279 F. Supp. 2d at 1052. Unlike the situation in *Spearman*, the district court's remand order here was not occasioned by Rote's failure to satisfy the prerequisites for bringing her claim in district court.

Instead, Rote's case is more closely analogous to those where courts have found that fees incurred during an administrative remand were appropriate. *See, e.g.*, *Hudson*, 490 U.S. 877; *Delaware Valley*, 478 U.S. 546. "Where the administrative proceedings are ordered by the district court and where that court retains jurisdiction over the action during the pendency of the administrative proceedings, we hold that ERISA authorizes the award of associated costs." *Peterson v. Cont'l Cas. Co.*, 282 F.3d 112, 122 (2d Cir. 2002) (upholding an award of similar fees incurred during a remand to the plan administrator); *cf. Graham v. Hartford Life & Accident Ins. Co.*, 501 F.3d 1153, 1163 (10th Cir. 2007) ("[W]e do not intend to create a per se rule that attorney's fees are inappropriate whenever a district court decides to remand a claim to the plan administrator rather than ordering benefits directly."). We therefore affirm the district court's attorney's fee award.[6]

The judgment of the district court is affirmed.

————————————————

---

[6]Titan does not argue that, once the district court determined that an attorney's fees award was permissible under the statute, the court abused its discretion in determining whether to award fees incurred during Rote's first suit or the administrative remand. Nor does Titan argue the court abused its discretion in determining the amount of fees to award generally.