# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-2800

_____

James B. Ross,

    Plaintiff - Appellant,

    v.

Rail Car America Group Disability
Income Plan; The Canada Life
Assurance Company,

    Defendants - Appellees.

\* \
\* \
\* \
\* \
\* Appeal from the United States \
\* District Court for the \
\* District of Nebraska. \
\* \
\* \
\* \
\* \
\*

_____

Submitted: March 15, 2001

Filed: April 9, 2002

_____

Before BYE and JOHN R. GIBSON, Circuit Judges, and FRANK,[1] District Judge.

_____

JOHN R. GIBSON, Circuit Judge.

    James Ross appeals from the district court's[2] entry of summary judgment in favor of Canada Life Assurance Company on his amended complaint seeking relief

___

[1]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota, sitting by designation.

[2]The Honorable Thomas M. Shanahan, United States District Judge for the District of Nebraska.

under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001-1461 (1994 & Supp. V 1999). Ross had been receiving disability income benefits pursuant to a group insurance policy issued to his employer by Canada Life. When those benefits ceased, Ross brought this action against three entities: Canada Life; Rail Car America, Inc., his employer;[3] and Rail Car America Group Disability Income Plan, the employee benefit plan established to provide disability income benefits to Rail Car employees. Ross later voluntarily dismissed the action against Rail Car America, Inc., and the district court entered summary judgment in favor of the Plan and Canada Life.

Ross argues on appeal that the district court erred by determining that the Plan was twice properly amended. The first amendment shortened the duration of his benefits and the second reduced the amount of his monthly payment. Ross also argues that the district court erred in finding that Canada Life was not the Plan Administrator and therefore not liable for statutory damages for failing to provide documents that he requested. Finally, Ross objects to evidentiary and attorney's fee rulings by the district court. We affirm the judgment entered by the district court.

I.

We review the district court's grant of summary judgment de novo, viewing the record in the light most favorable to Ross as the non-moving party. Woo v. Deluxe Corp., 144 F.3d 1157, 1160 (8th Cir. 1998). Ross, who became disabled due to colon cancer while he was employed at Rail Car, began receiving benefits under the Rail Car Disability Income Plan in 1992. The Plan is an employee welfare benefit plan as defined in 29 U.S.C. § 1002(1), and it provided benefits through a Canada Life

_____

[3]The district court noted that Ross was actually employed by American Hydraulics, a company that later became a subsidiary of Rail Car America, Inc. Although the record does not reveal when the corporate change occurred, it is clear that Ross was a participant in the Rail Car America Group Disability Income Plan.

insurance policy held by Rail Car. In April 1997, Canada Life determined that Ross was no longer disabled and advised him that his benefits would cease at the end of that month. He appealed the termination decision and Canada Life agreed to continue paying benefits pending its investigation. After having no success in obtaining medical information it requested from Ross, Canada Life suspended benefits payments in December 1997. Ross then involved counsel in his efforts to resume benefits, and Canada Life once again prepared to review its decision on appeal.

During the appeal period, Canada Life advised Ross through his counsel that his benefits were being terminated for a new reason: he had exceeded the policy's maximum benefit period of sixty months. Canada Life also indicated that Ross had been overpaid benefits because the policy called for its benefits to be reduced by any Social Security disability payments he may have received, and he had failed to notify Canada Life that he was receiving dependent disability benefits. In addition, although his sixty months of benefits had been paid by May 1997, Canada Life continued to make monthly payments through December of that year. Canada Life requested no refund on these overpayments, but once again advised Ross that he had the right to appeal its determination. His attorney challenged the process under which the Canada Life policy had been amended before Ross became disabled (resulting in the sixty-month maximum benefit period) and requested documents concerning the amendment process. Canada Life did not respond, and Ross filed this action.

At various times during this more than year-long exchange of correspondence, Ross and his attorney asked Canada Life to provide copies of Plan documents. In response, Canada Life sent a copy of the insurance policy.

The Plan, as already noted, paid disability income benefits through the Canada Life insurance policy held by Rail Car.[4] Indeed, the policy constituted the Plan's only asset. The Rail Car policy was a standard long-term group disability policy offered by Canada Life for coverage of a policyholder's employees. All full-time employees of Rail Car were eligible for coverage, with the employee paying the premium by way of a payroll deduction. Employees were first notified of the policy and its benefits through employee meetings held in 1983, when Rail Car began offering the benefits. At that time, Rail Car gave each employee a copy of the Summary Plan Description relating to the policy. Thereafter, each new employee was given a copy of the Summary Plan Description after that employee completed ninety days of continuous employment (the policy's eligibility period).

In both 1990 and 1991, Canada Life informed Rail Car that employee premiums would be increased. Charles Franklin, a Rail Car vice president who was authorized by the company to act on its behalf as Plan Administrator, negotiated with Canada Life to change the terms of the coverage so as to avoid premium increases. In the fall of 1990, the policy was amended to reduce benefits from sixty-six percent of an employee's monthly earnings to sixty percent. In mid-1991, the policy was again amended to reduce the maximum benefit period for claimants who were under age 65 at the time they became disabled. Those benefits were originally available until the claimant reached age 65, but following the amendment, benefits were payable for a maximum of sixty months. As a result of these amendments, premiums actually decreased by five cents per $100 of a participant's income.

Franklin met individually with each Plan participant in June 1991, after both amendments were negotiated, and provided each with a personalized memorandum describing the changes and the premium formula to be effective July 1. In August

_____

[4]Although there is no indication that the Plan has ceased to exist, it no longer provides benefits through a policy with Canada Life.

1991, Franklin received copies of a new Summary Plan Description from Canada Life that reflected the amendments. He forwarded copies to each of the Rail Car facilities for distribution to participants. Ross denies having received a personalized memorandum and does not recall receiving a copy of the revised Summary Plan Description.

Because the Rail Car America Group Disability Income Plan is an employee benefit plan as defined by 29 U.S.C. § 1002(1) and (3), it is required to be "established and maintained pursuant to a written instrument," 29 U.S.C. § 1102(a)(1). The district court determined that the policy and the Summary Plan Description jointly constitute the Plan documents.[5] The policy is a standard contract of insurance setting forth eligibility requirements, benefit payments, and similar information. It contains no mention of ERISA or its requirements. The Summary Plan Description that was in place at the time Mr. Ross applied for benefits in 1992 provided general information about the policy. ("While it does not take the place of the Group Policy and is not a contract of insurance, [this Summary Plan Description] explains the essential features of the group plan.") In addition, it provided information about the Plan, as required by ERISA, including the Plan's name, the name and address of the policyholder, identification of the type of plan and type of administration, and a statement of a participant's ERISA rights. See 29 U.S.C. § 1022 (Supp. V 1999) (setting forth required contents of summary plan descriptions);

---

[5]The district court's determination was correct as a matter of law. Jensen v. Sipco, Inc., 38 F.3d 945, 949 (8th Cir. 1994) ("[Summary plan descriptions] are considered part of the ERISA plan documents."). As the Supreme Court explained in Curtiss-Wright Corp. v. Schoonejongen, 514 U.S. 73, 83 (1995), one of the purposes of § 1102(a)(1)'s requirement that every employee benefit plan be established and maintained through a written document is to enable participants and beneficiaries to readily learn their rights and obligations. In this case, then, it follows that both the Summary Plan Description and the policy constitute the Plan because the former identifies the Plan Administrator and sets forth participants' ERISA rights, while the latter describes the benefits and amendment procedure.

29 C.F.R. § 2520.102-3 (2000) (same).  The Summary Plan Description identified the Plan Administrator as Rail Car America and provided the company's address and phone number.  It advised participants of their rights and protections under ERISA, including the right to obtain Plan documents and other Plan information from the Administrator.

The Summary Plan Description also notified participants that Canada Life was responsible for the administration of claims, including the handling and processing of claims forwarded to it by Rail Car.  Canada Life was designated as the entity authorized to make the final decision on all claims.  Mr. Ross does not allege, and the record contains no evidence, that Canada Life performed any functions beyond that of claims administrator.

## II.

Ross argues that summary judgment should not have been entered against him on the first two counts of his amended complaint because the district court erred in its conclusion that the policy was validly amended to reduce both the amount and the duration of his benefits.  Ross alleges that the policy was not properly amended according to procedures articulated in the policy itself, and that Canada Life's failure to follow the procedure should invalidate the purported amendments.

## A.

We begin our discussion of this issue by analyzing the ERISA provision that authorizes this cause of action.  Remarkably, this case went from complaint through judgment without any mention of what statutory provision that might be.[6]  Ross

---

[6]The pre-trial order recites the contested issues in the case, including "[w]hether Canada Life can be held liable for any purported breach by Rail Car as a

asserts in his opening brief to this court that this is a claim for benefits under 29 U.S.C. § 1132(a)(1) (section 502(a)(1) of ERISA), but it is not. Although his ultimate goal is to continue receiving disability income benefits from Canada Life, section 502(a)(1)(B) authorizes a participant to bring an action to recover benefits, enforce rights, or clarify rights to future benefits under the terms of the plan. Ross is not seeking to obtain benefits under the terms of the Plan. Rather, he is seeking to reform the Plan by obtaining a declaration that the purported 1990 and 1991 amendments are void. Section 502(a)(1)(B) does not authorize such a claim. See O'Brien v. Sperry Univac, 458 F. Supp. 1179, 1180 (D.D.C. 1978) (holding that suit seeking to have portion of "plan declared void because the summary plan description appears to alter the terms of the original plan . . . is not a claim under the 'terms of the plan'"); Guthrie v. Dow Chem. Co., 445 F. Supp. 311, 314-15 (S.D. Tex. 1978) (holding that plaintiffs who seek to have a portion of plan declared illegal for constitutional and ERISA violations do not state claim under section 502(a)(1)(B)); but see Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers Local No. 111 v. Douglas, 646 F.2d 1211, 1214 (7th Cir. 1981) (holding that union may bring section 502(a)(1)(B) claim against trustees of multi-employer trust fund for alleged violations of ERISA and Labor Management Relations Act in amending eligibility rules for welfare benefits, because the action seeks to clarify members' rights to future benefits if union would withdraw from plan).

Ross's choice of defendants provides another indication that this is not a section 502(a)(1)(B) claim. Although he named the Plan, Rail Car, and Canada Life as defendants, he later voluntarily dismissed Rail Car as a party defendant. It appears

---

co-fiduciary." This issue is foreclosed by Lockheed Corp. v. Spink, 517 U.S. 882, 889-90 (1996), where the Supreme Court held that a plan sponsor does not act as a fiduciary when it amends a plan. See also Voyk v. Bhd. of Locomotive Eng'rs, 198 F.3d 599, 605 (6th Cir. 1999); Walling v. Brady, 125 F.3d 114, 117-18 (3d Cir. 1997). Accordingly, if Rail Car was not acting as a fiduciary, Canada Life cannot be held liable as a co-fiduciary.

as though the Plan was never more than a nominal party in the district court proceedings.  In its ruling on Ross's and Canada Life's cross motions for summary judgment, the district court stated:

> Through an apparent abundance of caution, Ross named Rail Car America Group Disability Income Plan as a defendant to this action. However, because both Rail Car (the plaintiff's employer and Plan administrator) and Canada Life (the Plan's claims administrator) are no longer defendants to this action, the court will dismiss any remaining allegations against Rail Car America Group Disability Income Plan as moot.

The Plan did not file a brief on appeal because, as counsel wrote in a letter to the Clerk of Court, "the Plan was merely a nominal defendant in the lower court action and is likewise a nominal appellee."

The employee benefit plan itself is ordinarily liable for benefits payable under the terms of the plan and is thus the primary defendant in a section 502(a)(1)(B) action. Jass v. Prudential Health Care Plan, Inc., 88 F.3d 1482, 1490 (7th Cir. 1996) ("The appropriate defendant for a denial of benefits claim would be the Plan. . . ."); Gelardi v. Pertec Computer Corp., 761 F.2d 1323, 1324 (9th Cir. 1985); see also 29 U.S.C. § 1132(d)(2) ("Any money judgment under this subchapter against an employee benefit plan shall be enforceable only against the plan as an entity and shall not be enforceable against any other person unless liability against such person is established in his individual capacity under this subchapter."); cf. Everhart v. Allmerica Fin. Life Ins. Co., 275 F.3d 751, 754 (9th Cir. 2001) (recognizing line of cases allowing a claimant to bring an action to recover benefits against a plan administrator, but finding no authority for such a claim to be brought against the plan's insurer) (citing cases).

The two counts which seek to invalidate the amendments can only be characterized as arising under 29 U.S.C. § 1132(a)(3), section 502(a)(3) of ERISA. It is this provision which authorizes a participant to bring an action to enjoin any act which violates either a provision of ERISA Title I (Protection of Employee Benefit Rights, 29 U.S.C. §§ 1001-1191c) or the terms of the plan, or to obtain other appropriate equitable relief to enforce any provisions of Title I or the terms of the plan. Ross argues that Canada Life's ability to amend the policy is circumscribed by the amendment procedure set forth in the policy itself pursuant to 29 U.S.C. § 1102(b)(3) (section 402(b)(3) of ERISA), and that Canada Life violated the prescribed procedure when it failed to attach signed amendments to the policy and failed to obtain Rail Car's signature on the amendments. Although he ultimately seeks a restoration of full benefits, the vehicle for that requested relief is invalidation of the amendments. As such, Ross seeks equitable relief to enforce a provision of Title I, namely section 402(b)(3) of ERISA.[7]

B.

The district court determined that the Plan was amended in conformity with the policy's provisions and that the amendments were therefore valid, citing section 402(b)(3) of ERISA and the seminal case of Curtiss-Wright Corp. v. Schoonejongen, 514 U.S. 73, 78 (1995). We review the district court's interpretation of ERISA under

---

[7]In making this statement, we are mindful of the Supreme Court's narrow reading of equitable relief available under 29 U.S.C. § 1132(a)(3), most recently repeated in Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, ___, 122 S. Ct. 708, 712 (2002) (explaining that "equitable relief" as used in § 1132(a)(3) means something less than all relief, instead referring to categories of relief typically available in equity). In order to obtain complete relief, a successful plaintiff may need to assert claims against both a plan and its sponsor and/or administrator and/or issuer of an insurance policy that provides benefits under the plan, asserting claims under §§ 1132(a)(1)(B) and (a)(3).

a de novo standard.  Wetzel v. Lou Ehlers Cadillac Group Long Term Disability Ins. Program, 222 F.3d 643, 646 (9th Cir. 2000) (en banc).

Ross does not dispute that the Rail Car Plan was susceptible to amendment. As the Supreme Court laid out in Curtiss-Wright, a section 402(b)(3) analysis of the validity of an amendment requires two things: the plan must set forth who is authorized to amend the plan and how amendments are to be effectuated.  514 U.S. at 78-80.  The parties and the district court addressed the issue as though Canada Life had the authority to amend it.  However, that authority resided with Rail Car.

As the Summary Plan Description made clear, Rail Car America was the Plan's sponsor: it was the policyholder and it established this disability income plan for its employees.  See 29 U.S.C. § 1002(16)(B) ("The term 'plan sponsor' means . . . the employer in the case of an employee benefit plan established or maintained by a single employer. . . .").  As such, Rail Car had the unilateral right to amend the policy that provided insurance under the Plan.  "Employers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans."  Curtiss-Wright, 514 U.S. at 78; accord Ravenscraft v. Hy-Vee Employee Benefit Plan & Trust, 85 F.3d 398, 401 (8th Cir. 1996).  Thus, the answer to the "who" question was Rail Car and not Canada Life.

Determining "how" the plan can be amended is shorthand for satisfying section 402(b)(3)'s requirement that a plan have "a procedure for identifying the persons who have authority to amend the plan."  Curtiss-Wright, 514 U.S. at 78.  Here, the policy answers the "how" question by pointing to a particular way in which the amendment process is carried out.  The change must: 1) be in writing; 2) be attached to the policy;

3) bear the original or reproduced signatures of Canada Life's president, chief actuary, or secretary; and 4) bear the signature of its registrar or assistant registrar.[8]

Ross devotes a substantial part of his brief to arguing that the amendments are void under section 402(b)(3) because Canada Life cannot prove that it followed this designated procedure. Specifically, he finds fault with the district court's conclusion that the amendments were attached to the policy and bore the requisite signatures. Under Ross's theory, the 1990 and 1991 amendments were void because Canada Life did not produce original amendment pages (with original signatures by one of the listed Canada Life officers and its registrar or assistant registrar) attached to the original policy. Ross grounds his theory on ERISA's goal of enabling employees to determine their rights and obligations under a plan by examining the plan documents. We are not persuaded that the district court erred.

First, Ross urges a statutory goal that the Supreme Court has rejected under section 402(b)(3). In Curtiss-Wright, plaintiffs argued that section 402(b)(3) was enacted to ensure that every plan has an amendment procedure and to enable participants and beneficiaries to examine a single plan document for the purpose of ascertaining their rights and obligations. 514 U.S. at 83. The Court agreed as to the first purpose but disagreed as to the second, whose statutory sanctuary it declared to be section 402(a)(1) ("Every employee benefit plan shall provide a procedure for establishing and carrying out a funding policy and method consistent with the objectives of the plan and the requirements of this subchapter. . . ."). The Court described the goal of section 402(b)(3) as ensuring that each plan is amendable, giving such amendments their due, and making amendments stand out and be distinguishable from other communications. 514 U.S. at 82.

---

[8]The policy does not require Rail Car's signature on amendments, contrary to Ross's assertion.

The undisputed facts confirm that the copy of the policy Canada Life sent to Ross easily satisfied the goals of section 402(b)(3). The amendments were incorporated in the policy and were restated in their entirety so as to delete the superceded provisions. The document was consecutively paginated and each page listed an effective date. In sum, the amended policy was clear and concise. We fail to see how a document fashioned in the manner Ross suggests would achieve these goals. His counsel conceded at oral argument that he had never requested to see the original policy with the amendments attached, nor did he dispute the reliability of the copy he received.

In reality, the essence of Ross's entire claim in counts one and two is an evidentiary one. He objects to the district court's conclusions as to the admissibility of affidavits concerning Canada Life's procedures and he challenges the foundation laid for the authenticity of documents. We are well satisfied that the district court did not abuse its discretion with respect to these evidentiary issues. He also objects to the district court's consideration of evidence outside of the administrative record, but the limitation he urges does not apply in a de novo review of the district court's interpretation of ERISA. Cf. Donatelli v. Home Ins. Co., 992 F.2d 763, 765 (8th Cir. 1993) (in case involving review of fiduciary's denial of benefits, district court may allow introduction of evidence outside the administrative record if standard of review is de novo).

We affirm the entry of summary judgment on counts one and two of Ross's amended complaint because the 1990 and 1991 amendments were validly enacted. Because of our decision, we do not reach the issue of the district court's alternative holding that even an improper amendment would be valid because Ross introduced no evidence of bad faith, active concealment, or detrimental reliance that would justify the relief he seeks.

III.

Ross asserts that the district court erred by entering summary judgment in favor of Canada Life on counts three and four of his amended complaint, in which he seeks relief under 29 U.S.C. § 1132(c) (section 502(c) of ERISA) for Canada Life's alleged failure to provide him with Plan documents upon written request.[9] Ross twice asked Canada Life to provide documents on which it was relying to support the validity of the 1990 and 1991 amendments, and in reply he was sent a copy of the insurance policy. He did not receive any change forms reflecting the amendments in response to these requests, but after he filed suit Canada Life produced more than 1,000 pages of documents that it had not provided earlier, including a change form for each amendment.

Section 502(c) of ERISA allows the district court to impose a discretionary $100 per day fine on a plan administrator who fails to provide copies of certain plan documents to participants and beneficiaries. The district court entered summary judgment on counts three and four because it determined that Canada Life is not the Plan Administrator. Ross argues that this is in error because the Summary Plan Description is inherently ambiguous as to the identity of the Administrator, and because Canada Life served as claims administrator and was the repository of the Plan documents and thus should be held to be the de facto Plan Administrator.

Ross's arguments cannot stand in the face of the uncontroverted facts, ERISA, and settled case law. The Summary Plan Description unambiguously identifies Rail Car as the Plan Administrator. Canada Life admits that it had control over claims under the policy, but assuming that function did not transform it into the Plan

_____

[9]Section 502(a)(1)(A) of ERISA authorizes a cause of action for the relief requested in section 502(c). Specific mention of this claim was included in the pre-trial order.

Administrator. ERISA specifically makes the Plan Administrator responsible for providing the Plan documents Ross requested, see 29 U.S.C. § 1024(b), and the Summary Plan Description directed that all requests for Plan documents be made in writing to the Plan Administrator.

In his effort to gain a reversal, Ross sets forth diametrically opposing arguments. He first says that Canada Life should have provided him with all of the Plan documents he requested because we should hold that Canada Life was the Plan Administrator. He then says that Canada Life should not have sent the documents that it did send because that left Ross with the impression that it was the Plan Administrator. These arguments are hardly consistent, comprehensible, or persuasive. We affirm the district court's entry of summary judgment on counts three and four of the amended complaint.

IV.

We have considered Ross's other arguments and find them to be without merit. Accordingly, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-14-