# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 03-1294

_____

| | |
|---|---|
| Julie Parke, | * |
| | * |
| Plaintiff - Appellee, | * |
| | * |
| v. | * |
| | * |
| First Reliance Standard Life Insurance | * |
| Company, | * |
| | * |
| | * |
| Defendant - Appellant. | * |


_____

No. 03-1437

_____

Appeals from the United States
District Court for the
District of Minnesota.

| | |
|---|---|
| Julie Parke, | * |
| | * |
| Plaintiff - Appellant, | * |
| | * |
| v. | * |
| | * |
| First Reliance Standard Life Insurance | * |
| Company, | * |
| | * |
| Defendant - Appellee. | * |

_____

Submitted:  December 15, 2003

Filed:  May 24, 2004

_____

Before WOLLMAN, JOHN R. GIBSON, and RILEY, Circuit Judges.
_____

JOHN R. GIBSON, Circuit Judge.

The district court held that First Reliance Standard Life Insurance Company was liable to Julie Parke under the Employment Retirement Income Security Act of 1974, or ERISA, for prejudgment interest during the period in which Parke's benefits were wrongfully delayed. The district court denied Parke's request for certification of a class but awarded her attorney's fees.[1] Both parties appeal portions of the district court's order and judgment. First Reliance argues: 1) the district court erred in awarding prejudgment interest to Parke based on First Reliance's delay in starting payments; 2) the district court erred in awarding Parke the attorney's fees she incurred during administrative review proceedings related to her claim; and 3) the district court erred in awarding Parke approximately $96,000 in attorney's fees. For her part, Parke appeals two issues[2]: 1) the district court's denial of class certification; and 2) the

_____

[1]First Reliance's obligation to pay benefits is not at issue and has not been disputed since early in the litigation.

[2]Parke also contends that we lack jurisdiction to hear this appeal because First Reliance waited to file its notice of appeal until more than 30 days after the district court's September 25, 2002 judgment was entered. Because we have already denied Parke's motion to dismiss the appeal on this ground, we will simply point out that jurisdiction is proper when an appeal is filed within 30 days after a *final decision* is rendered by the district court. See 28 U.S.C. § 1291 (2003) ("The courts of appeal . . . shall have jurisdiction of appeals from all *final decisions* of the district courts of the United States.") (emphasis added). The Order for Judgment dated September 25, 2002, was not a final decision because the district court explicitly reserved its determination of the amount of attorney's fees and interest owed by First Reliance. See Hill v. St. Louis Univ., 123 F.3d 1114, 1120 (8th Cir. 1997) ("[W]e have held that a judgment awarding attorney fees for bad faith damages, but not fixing the amount of the fees, is not a final, appealable order."). The decision became final

-2-

district court's decision to allow First Reliance to offset the gross, rather than net, social security benefits Parke received in calculating her benefits. We affirm the district court in all respects except its award of attorney's fees incurred during Parke's administrative review proceedings, which we reverse.

## FACTS

Julie Parke suffers from insulin-dependent diabetes and a variety of severe diabetic complications. In 1998, these ailments forced her to resign from her position as an account executive with Petry Media Corporation. She subsequently applied for long-term disability benefits from First Reliance Standard Life Insurance Company, which provided such benefits to Petry employees under a group policy. First Reliance denied her claim on November 6, 1998, because it concluded that her job was "sedentary" and could be performed despite her health problems. Parke, with the help of counsel, requested administrative review of this denial on February 3, 1999.

First Reliance reversed its decision on June 4, 1999, and retroactively awarded Parke long-term disability benefits through January 30, 1999. However, First Reliance suspended ongoing benefits to Parke because it contended that Parke had not submitted adequate medical records to demonstrate the permanent nature of her disability. Parke filed this action on July 7, 1999, seeking in part to force First Reliance to reinstate her benefits. On October 14, 1999, First Reliance voluntarily reinstated Parke's benefits, effective retroactively to February 1, 1999.

---

when the district court issued its order on January 8, 2003. Jurisdiction is proper because First Reliance filed its notice of appeal within 30 days after January 8, 2003. See Maristuen v. Nat'l States Ins. Co., 57 F.3d 673, 678-79 (8th Cir. 1995) (holding that an order granting unquantified attorney's fees was not a final decision; thus, the award of fees was appealable until 30 days after the sum was calculated).

The reinstatement of benefits did not completely resolve the dispute. Parke asserted that she was entitled to interest and attorney's fees in connection with her efforts to have her benefits resumed. She also claimed that First Reliance had incorrectly calculated an offset under the policy for Parke's social security benefits. She moved for certification of her complaint as a class action, and both parties filed cross motions for summary judgment. The district court denied all three motions.

Parke's claims ultimately were tried to the district court. The district court determined that: Parke is entitled to interest during the time her benefits were denied and suspended in violation of First Reliance's fiduciary duty; First Reliance correctly calculated the social security offset; and Parke is entitled to attorney's fees and costs. The district court awarded more than $96,000 in attorney's fees, which included fees incurred by Parke during the administrative proceedings. The parties appeal most aspects of the district court's order.

I.

Parke argues that the district court erred by denying her motion for class certification insofar as it sought injunctive relief for other members of the putative class . Parke sought an order enjoining First Reliance from suspending or terminating long-term disability benefits of a claimant until after it receives evidence that the claimant is no longer disabled or until after the claimant unreasonably refuses to provide current evidence of disability. In essence, Parke's claim is that First Reliance engages in a practice of awarding long-term disability benefits to a claimant, then terminating or suspending those benefits without asking for or receiving evidence that the claimant's condition has changed.

Parke may sue on behalf of a class only if she meets four threshold requirements: 1) the class is so numerous that joinder of all members is impracticable; 2) there are questions of law or fact common to the class; 3) the claims or defenses

of the representative parties are typical of the claims or defenses of the class; and 4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a) (2003). If these four requirements are met, Parke still must satisfy at least one of the requirements contained in Fed. R. Civ. P. 23(b). The district court denied the motion for class certification because it concluded that Parke could not meet the threshold requirement of typicality. The district court determined that the Petry Media disability plan permits First Reliance to terminate benefits prior to receiving proof that the claimant's disability status has changed. Thus, even if First Reliance had breached its duties under the plan in the particular context of Parke's claim, the propriety of terminating any other claimant's benefits remains dependent on the facts of the individual case and the terms of any other disability plans under which First Reliance may review claims.[3]

We review a district court's denial of class certification for abuse of discretion. Owner-Operator Indep. Drivers Ass'n, Inc. v. New Prime, Inc., 339 F.3d 1001, 1011 (8th Cir. 2003), cert. denied, 124 S.Ct. 1878 (2004). The record shows that the district court did not abuse its discretion by refusing to certify a class for injunctive relief. The Petry Media plan states that "monthly benefits are terminated on the earliest of . . . 2) the date the Insured ceases to meet the Eligibility Requirements."

---

[3]Parke originally sought to certify what would effectively be a second class of long-term disability claimants, those who had received benefits that were later suspended or whose claims were denied and then reversed, to obtain interest payments and attorney's fees on their behalf. The district court refused to certify the class for monetary relief for the same reason that it refused to certify the class for injunctive relief: because Parke could not meet the threshold requirement of typicality. The district court concluded that the question of whether a particular claimant's benefits were wrongfully denied or suspended was highly dependent on individual facts. Parke acknowledges in her brief that "that is a correct ruling," but nonetheless considers the claim for injunctive relief to be independently appropriate for class certification.

-5-

To be eligible for benefits, a claimant must provide medical documentation showing that the claimant is totally disabled. However, the evidence of total disability is not always sufficient to show that the disability is permanent or long-term. Thus, while Parke may be correct in her argument that First Reliance's termination of benefits before asking for or receiving updated medical records would often constitute a breach of First Reliance's obligations, the question of whether a breach occurred remains a case-by-case determination. See Holmes v. Pension Plan of Bethlehem Steel Corp., 213 F.3d 124, 137-38 (3d Cir. 2000) (affirming district court's denial of class certification for class of beneficiaries whose benefits were wrongfully delayed because "the issue of liability itself requires an individualized inquiry into the equities of each claim."). Moreover, although the district court never directly considered the merits of the injunction request itself, Parke's lawsuit itself suggests the adequacy of remedies at law. See United States v. Grand Labs., Inc., 174 F.3d 960, 965 (8th Cir. 1999) ("Injunctive relief is generally appropriate when there is no adequate remedy at law. Probably the most common method of demonstrating that a legal remedy is inadequate is by showing that irreparable harm will result.") (internal citations and quotation omitted).

III.

Parke argues that the district court erred in calculating the extent to which the social security benefits she receives reduce her monthly benefits from First Reliance. Parke's disability policy obligates First Reliance to provide her with 60% of her pre-disability earnings. However, the policy also contains an integration provision allowing First Reliance to reduce the amount payable to Parke each month by the amount of benefits she receives from other defined sources:

> OTHER INCOME BENEFITS: Other Income Benefits are benefits resulting from the same Total Disability for which a Monthly Benefit is payable under this Policy. These Other Income Benefits are:

* * *

    (7) disability or Retirement Benefits under the United States
         Social Security Act . . . for which:

        (a) an Insured is eligible to receive because of his/her
           Total Disability.

Parke does not contest First Reliance's right to reduce her disability benefits as a result of her social security benefits, but she does dispute the amount of the offset.

The parties agree that Parke is entitled to $1,500 per month in gross social security benefits. However, she elected to have taxes withheld on these benefits, and therefore receives *net* benefits of only $1,123.30 each month.[4] First Reliance nonetheless offset its obligation to her by $1,500 because it concluded that she was "eligible to receive" the full $1,500 each month. The district court denied Parke's claim to modify the offset.

Because First Reliance has discretionary authority under the policy to determine eligibility for benefits, we review its decision for an abuse of discretion. See Woo v. Deluxe Corp., 144 F.3d 1157, 1160 (8th Cir. 1998).

We conclude that First Reliance did not abuse its discretion in offsetting its obligation to Parke by the full $1,500 each month. The policy permits First Reliance to offset its obligation by the amount of social security benefits Parke is "eligible to receive." Although Parke elected to have taxes withheld on her social security

---

[4] This was the amount calculated by the district court. Parke's brief claims that she receives only $1,012.17 each month after taxes are withheld, but fails to explain the discrepancy between her figure and that found by the district court. Because we conclude that First Reliance is entitled to offset the full $1,500 each month, this discrepancy is immaterial.

-7-

benefits, First Reliance acted well within its discretion by concluding that she is eligible to receive the full $1,500 each month. Parke could, for example, choose to receive the full $1,500 and then pay taxes at the end of the year. Cf. Trujillo v. Cyprus Amax Minerals Co. Ret. Plan Comm., 203 F.3d 733, 736-38 (10th Cir. 2000) (affirming district court's conclusion that the plan could offset the entire amount of worker's compensation benefits awarded to the beneficiary even though a portion of those benefits went immediately to his attorney). We affirm the district court's refusal to modify the offset.

IV.

First Reliance raises two issues on appeal. First, it argues that the district court erred in awarding prejudgment interest to Parke. The court found that First Reliance's actions in initially denying and later suspending Parke's benefits constituted a breach of its obligations under the plan and its statutory duties under ERISA. Relying on 29 U.S.C. § 1132 (a)(3)(B), which authorizes courts to award "other appropriate equitable relief" for ERISA violations, the district court ordered First Reliance to pay "prejudgment interest" for the period during which benefit payments were wrongfully denied and suspended. The district court made this award under the equitable theory of accounting for profits.[5] First Reliance appeals the award of interest but not the district court's holding that it violated its fiduciary duties under ERISA. Because the district court's award depended upon its interpretation of ERISA, we review the award *de novo*. Ross v. Rail Car Am. Group Disability Income Plan, 285 F.3d 735, 741 (8th Cir. 2002).

---

[5] The district court actually stated that it was "disgorg[ing] the interest" First Reliance earned on the money due to Parke. Disgorgement of profits results from a court's determination that an accounting for profits is an appropriate equitable remedy. 1 Dan B. Dobbs, Law of Remedies § 4.3(5), at 610 (2d ed. 1993).

We have already held that courts may award prejudgment interest as "other appropriate equitable relief" under § 1132(a)(3)(B) when benefits are wrongfully delayed. In Dependahl v. Falstaff Brewing Corp., 653 F.2d 1208, 1219 (8th Cir. 1981), we concluded that an award of prejudgment interest was both permissible under ERISA and appropriate where the plaintiffs had been wrongfully denied their contractual benefits for approximately four years before final judgment was rendered. "Under these circumstances, an award of prejudgment interest is necessary in order that the plan participants obtain 'appropriate equitable relief.'" Id. (citing 29 U.S.C. § 1132(a)(3)(B)). See also Kerr v. Charles F. Vatterott & Co., 184 F.3d 938, 945 (8th Cir. 1999) ("Prejudgment interest awards are permitted under ERISA where necessary to afford the plaintiff 'other appropriate equitable relief' under section 1132(a)(3)(B)."). Several other courts have also held that prejudgment interest is a permissible "equitable" remedy under § 1132(a)(3)(B). See Dunnigan v. Metro. Life Ins. Co., 277 F.3d 223, 228-29 (2d Cir. 2002); Clair v. Harris Trust & Sav. Bank, 190 F.3d 495, 498-99 (7th Cir. 1999); Fotta v. Trs. of United Mine Workers of Am., 165 F.3d 209, 212 (3d Cir. 1998) (Fotta I).

First Reliance attempts to overcome this precedent in two ways. First, it contends that the instant situation is not governed by our prior case law because First Reliance's voluntary reinstatement of benefits meant there was no underlying judgment upon which the district court could make an award of "prejudgment" interest. Second, it argues that a recent Supreme Court case, Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204 (2002), narrows ERISA's definition of "other appropriate equitable relief" to the point where interest on delayed benefits is no longer a permissible remedy.

We are not persuaded by First Reliance's formalistic attempt to create a distinction between instances where an ERISA-governed plan provider begins paying wrongfully denied benefits after a judgment is obtained and those instances where the

provider begins paying wrongfully denied benefits without a judgment.  If interest is an appropriate remedy under § 1132(a)(3)(B) to avoid unjust enrichment of a plan provider who wrongfully delays the payment of benefits, the award is appropriate whether a judgment is obtained or not.  "The principles justifying prejudgment interest also justify an award of interest where benefits are delayed but paid without the beneficiary's having obtained a judgment."  Fotta I, 165 F.3d at 212.  See also Kerr, 184 F.3d at 946 ("[T]he wrongdoer should not be allowed to use the withheld benefits or retain interest earned on the funds during the time of the dispute.").  At most, First Reliance has merely established that the district court improperly labeled an otherwise appropriate award.

The closer question is whether interest on wrongfully delayed or suspended benefits remains a viable remedy under § 1132(a)(3)(B) following the Supreme Court's decision in Knudson. It appears that no appellate court has considered this question.[6]

In Knudson, a health insurance plan covered $411,157.11 in medical expenses incurred by one of its beneficiaries following her injury in a car accident.  534 U.S. at 207.  The beneficiary later filed a state-court tort action against the manufacturer of the car and others, which resulted in a $650,000 settlement.  The beneficiary never had actual possession of this money; instead, the bulk of the settlement went to attorney's fees and into a trust for the beneficiary's medical care.  Her health insurance plan contained a provision entitling the plan to reimbursement of any expense for

---

[6]A case from the Third Circuit, Fotta v. Trs. of United Mine Workers of Am., 319 F.3d 612, 616 (3d Cir.), cert. denied, 124 S.Ct. 468 (2003) (Fotta II), was decided after Knudson and reiterated that circuit's earlier holding that interest on delayed payments was permissible as "other appropriate equitable relief."  However, it appears that the defendant in that case did not raise the issue before us here; the dispute in Fotta II centered on whether a plaintiff could recover interest without proving that the plan acted wrongfully, and Knudson was not even mentioned.

-10-

which the beneficiary received a payment from a third party. Thus, Great-West, which had paid most of the medical expenses on behalf of the plan and was assigned the rights of the plan, filed a federal action under ERISA to recover $411,157.11 from the beneficiary. Great-West attempted to characterize the action for reimbursement as "other appropriate equitable relief" under § 1132(a)(3)(B).

The Supreme Court held that the relief sought by Great-West was essentially legal and therefore could not be awarded under § 1132(a)(3)(B). The Court explained that the term "other appropriate equitable relief" referred to "those categories of relief that were *typically* available in equity . . . ." Id. at 210 (quoting Mertens v. Hewitt Associates, 508 U.S. 248, 256 (1993)). Great-West's claim, whether labeled as an injunction to compel the payment of money past due under a contract, specific performance of a past due monetary obligation, or restitution, did not constitute the type of relief that was typically available in equity. Knudson, 534 U.S. at 210-18.

First Reliance argues that the relief requested by Parke is in all relevant respects indistinguishable from the relief sought in Knudson. In its view, Parke is simply using equitable terms to describe legal relief, and Knudson forecloses this type of recovery. See Knudson, 534 U.S. at 221 ("Because petitioners are seeking legal relief–the imposition of personal liability on respondents for a contractual obligation to pay money–[§ 1132(a)(3)(B)] does not authorize this action.").

It is undisputed that an accounting for profits–the remedy that allows for the disgorgement of profits awarded by the district court–is a type of relief that was typically available in equity and therefore is appropriate under § 1132(a)(3)(B). See Knudson, 534 U.S. at 214 n.2 (describing accounting for profits as "a form of equitable restitution"). The question is whether the award of interest made by the district court can actually be considered an accounting for profits, or whether it instead represents a legal claim disguised in equitable terms. See Flint v. ABB, Inc.,

337 F.3d 1326, 1331 (11th Cir. 2003), cert. denied, 124 S.Ct. 1507 (2004) ("The Court's decision in Knudson, therefore, raises the question whether [§ 1132(a)(3)] ever allows an award of interest for delayed benefits or whether such a claim is an impermissible attempt to dress an essentially legal claim in the language of equity.").

To resolve this question, we first must establish exactly what is meant by the term "accounting for profits." An accounting for profits is one of a category of traditionally restitutionary remedies in equity, and is often invoked in conjunction with a constructive trust. A constructive trust is imposed when a defendant has possession of particular funds or property that in good conscience belong to the plaintiff. 1 Dan B. Dobbs, Law of Remedies § 4.3(1), at 587 (2d ed. 1993). The plaintiff must specifically identify the particular funds or property in order to obtain the constructive trust; it is not enough that the defendant merely owes the plaintiff some money. Id. § 4.3(2), at 589-91; Knudson, 534 U.S. at 214 & n.2. An accounting is imposed when the property subject to the constructive trust produces profits while in the defendant's possession. The defendant is forced to disgorge those profits, although it is not necessary for the plaintiff to identify any particular *res* or fund of money holding the profits. See 1 Dobbs § 4.3(1), at 588 ("Unlike the [constructive] trust, however, accounting does not seek any particular *res* or fund of money; the defendant will be forced to yield up profits, but the defendant can pay from any monies he might have, not some special account.").

First Reliance argues that Parke is not entitled to an accounting for profits because she cannot establish any property upon which an underlying constructive trust could have been imposed. However, the availability of an accounting for profits is not limited to situations in which a constructive trust is imposed over specifically identifiable property. Under traditional rules of equity, a defendant who owes a fiduciary duty to a plaintiff may be forced to disgorge any profits made by breaching that duty, even if the defendant's breach was simply a failure to perform its

-12-

obligations under a contract. See 1 Dobbs § 4.3(5), at 611 n.16 ("If the 'breacher' [of a contract] also breaches a fiduciary duty, . . . the breacher-fiduciary may be made to disgorge his profits from the wrong. . . . The important ingredient added by the fiduciary status, however, is not that status in itself; what is added is wrongdoing as distinct from contract breach."); see also Valdes v. Larrinaga, 233 U.S. 705, 709 (1914) (holding that a "proper case for equitable relief" existed where the defendant breached a fiduciary duty to the plaintiff by failing to pay money owing under the contract).

We have precisely such a situation here. The district court concluded that First Reliance owed a fiduciary duty to Parke and that it breached that duty. First Reliance has not appealed that issue. Thus, First Reliance can be forced under § 1132(a)(3)(B) to disgorge any profits it earned as a result of that conduct. This is a remedy "typically available in equity" and therefore permissible after Knudson. See, e.g., Tull v. United States, 481 U.S. 412, 424 (1987) (describing disgorgement of improper profits as being "traditionally considered an equitable remedy").

Nonetheless, First Reliance points out that Parke has requested interest on the delayed benefits without presenting evidence that First Reliance made a profit during the period of withholding. First Reliance asserts that Parke cannot be awarded interest without submitting evidence of some specific profit that First Reliance earned by breaching its fiduciary duty.

In the particular context of withheld benefits under ERISA, we conclude that interest is an appropriate measure of the profits made by a defendant who breaches its fiduciary duty to a beneficiary. The purpose of an accounting for profits is to "disgorge gains received from improper use of the plaintiff's property or entitlements." 1 Dobbs § 4.3(5), at 610. A defendant like First Reliance "gains" from the wrongful withholding of the plaintiff's benefits even if the plaintiff does not prove

specific financial profit. In particular, the defendant receives a benefit from having control over the money. See id. § 3.6(2), at 344 n.22 ("[U]ntil the plaintiff is paid, the defendant has the use of funds that ought to go to the discharge of his obligation of the plaintiff. That is a benefit. The defendant may not use the funds or collect interest on them. Nevertheless, he has a benefit found in his power to do so."). Interest is, in many respects, the only way to account for this gain and therefore is an appropriate measure of the extent to which First Reliance was unjustly enriched.

We emphasize that the purpose of this award is to prevent First Reliance from profiting by its breach of fiduciary duty and not to compensate Parke for the delay in payment. See id. §4.3(5), at 608 ("In its most important meaning, [accounting for profits] is a restitutionary remedy based upon avoiding unjust enrichment."); In re Leasing Consultants Inc., 592 F.2d 103, 107 (2d Cir. 1979) ("[A]n equitable accounting is designed to prevent unjust enrichment by requiring the disgorgement of any benefits or profits received as a result of a fiduciary's breach of the duty of loyalty."). The fact that this equitable remedy produces the same damages that might be awarded in a breach of contract case at law is of no consequence. See Reich v. Cont'l Cas. Co., 33 F.3d 754, 756 (7th Cir. 1994) (explaining that an accounting for profits of a fiduciary "if ordered would be ordered in a suit in equity, and the remedy thus would be equitable, while a suit seeking identical relief against a nonfiduciary would normally be a suit at law and the relief sought therefore legal").

In sum, we hold that an award of interest on wrongfully delayed benefits remains permissible under § 1132(a)(3)(B) after Knudson as a remedy for a breach of a fiduciary duty to a beneficiary. Thus, we affirm the district court's award of interest in the amount of $687.68.

-14-

V.

The district court awarded Parke $96,448.77 for attorney's fees, which includes those fees incurred during First Reliance's internal administrative review process. First Reliance argues that ERISA does not permit the award of attorney's fees incurred during administrative review of a beneficiary's claim and that the overall award of over $96,000 was unreasonable in a situation where the actual damages were only $687.68.

The district court's award of attorney's fees under ERISA is ordinarily reviewed for abuse of discretion. Martin v. Arkansas Blue Cross & Blue Shield, 299 F.3d 966, 969 (8th Cir. 2002). However, the question of whether ERISA permits the award of attorney's fees incurred during administrative proceedings is one of statutory interpretation, which we review *de novo*. See Ross v. Rail Car Am. Group Disability Income Plan, 285 F.3d 735, 741 (8th Cir. 2002), cert. denied, 537 U.S. 1159 (2003) (reviewing *de novo* the district court's interpretation of ERISA). Thus, we will review *de novo* the threshold question of whether ERISA permits recovery of attorney's fees incurred during the administrative review of a beneficiary's claim, then review the reasonableness of the award under an abuse of discretion standard.

A.

ERISA contains a fee-shifting provision, 29 U.S.C. § 1132(g)(1), which states: "In any action under this subchapter (other than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." The question before us is whether the phrase "any action" refers only to formal judicial actions, or whether we should interpret it more broadly to encompass administrative proceedings that take place beforehand. Four circuits have considered this question, and all four have held

-15-

that ERISA does not allow recovery of attorney's fees incurred during pre-litigation administrative proceedings. See Peterson v. Cont'l Cas. Co., 282 F.3d 112, 118-21 (2d Cir. 2002); Rego v. Westvaco Corp., 319 F.3d 140, 149-50 (4th Cir. 2003); Anderson v. Procter & Gamble Co., 220 F.3d 449, 452-56 (6th Cir. 2000); Cann v. Carpenters' Pension Trust Fund, 989 F.2d 313, 315-17 (9th Cir. 1993).

The district court disagreed with these holdings because it concluded they were at odds with two Supreme Court cases authorizing the award of attorney's fees for certain administrative proceedings even when the fee-shifting provisions of the relevant statutes referred only to "actions." See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546 (1986); Sullivan v. Hudson, 490 U.S. 877 (1989). In Delaware Valley, the Court interpreted the phrase "any action" under the Clean Air Act broadly enough to permit the award of attorney's fees incurred during post-litigation administrative proceedings. 478 U.S. at 557-61. Similarly, the Court in Sullivan held that the phrase "any civil action" in the Equal Access to Justice Act allowed the prevailing party to recover fees incurred during post-litigation administrative proceedings. 490 U.S. at 883-93. Delaware Valley and Sullivan stopped far short of holding that the term "action" *always* should be interpreted to allow the award of fees for administrative proceedings. Instead, such an award is appropriate only "where administrative proceedings are intimately tied to the resolution of the judicial action and necessary to the attainment of the results Congress sought to promote by providing for fees. . . ." Id. at 888. See also New York Gaslight Club, Inc. v. Carey, 447 U.S. 54, 60-62 (1980) (placing critical importance on Congress's use of the disjunctive "action *or proceeding*" in Title VII of the Civil Rights Act of 1964 in concluding that the prevailing party could recover fees incurred during state administrative proceedings).

The Sixth and Ninth circuits, in particular, carefully distinguished the holdings in Sullivan and Delaware Valley from the question of whether an attorney's fee award

under ERISA may include fees incurred during the administrative review process. See Anderson, 220 F.3d at 453-54; Cann, 989 F.2d at 316-17. Those courts noted that the Supreme Court authorized the award of fees in Sullivan and Delaware Valley only when the administrative proceedings occurred *after* the litigation and where the administrative proceedings were necessary to enforce a final judgment that had already been obtained. See Anderson, 220 F.3d at 453 ("[I]t is clear from the Court's reasoning [in Sullivan] that fees for administrative proceedings under 29 U.S.C. § 1132(g) should be recoverable only when the final judgment (or enforcement thereof) in the prevailing party's *suit* depends on the administrative proceedings for which fees are being claimed.") (emphasis in original); Cann, 989 F.2d at 317.

We are persuaded by their reasoning. The administrative proceedings in Sullivan and Delaware Valley were intertwined with the judicial actions in those cases to an extent that is simply not present in the context of pre-litigation administrative proceedings under ERISA. See Sullivan, 490 U.S. at 885 (explaining that the close relationship between the judicial action and subsequent administrative proceedings in that case "suggest[s] a degree of direct interaction between a federal court and an administrative agency alien to traditional review of agency action under the Administrative Procedure Act"); Delaware Valley, 478 U.S. at 558-59 ("In a case of this kind, measures necessary to enforce the remedy ordered by the District Court cannot be divorced from the matters upon which Delaware Valley prevailed in securing the consent decree."). The administrative proceedings related to Parke's claim, though mandatory in a claim for benefits under ERISA's exhaustion requirement, are neither necessary for enforcement of a judicial decree nor so closely connected to the resolution of the judicial action as to fall within the scope of Sullivan and Delaware Valley. In fact, if an ERISA plan beneficiary prevails at the administrative level, there will be no judicial action at all. We cannot conclude that administrative proceedings are "intimately tied to the resolution of the judicial

-17-

action," <u>Sullivan</u>, 490 U.S. at 888, when judicial action often will not even be necessary.

We join the Second, Fourth, Sixth, and Ninth Circuits in holding that the term "any action" in 29 U.S.C. § 1132(g)(1) does not extend to pre-litigation administrative proceedings. Thus, we reverse the portion of the district court's fee award attributable to the administrative review of Parke's claim and remand to the district court with instructions to limit the fee award to fees incurred in the judicial action.[7]

B.

First Reliance contends that the remainder of the fee award is unreasonable in light of the small size of the interest award itself and the fact that First Reliance made a significant offer of judgment early in the litigation. We conclude that, with the exception of the portion of the award attributable to the administrative proceedings, the district court did not abuse its discretion in making the award.

The district court specifically considered each of the five factors set out in <u>Lawrence v. Westerhaus</u>, 749 F.2d 494, 495-96 (8th Cir. 1984), for determining the propriety of an award of attorney's fees under ERISA. These factors include: 1) the degree of culpability or bad faith which can be assigned to the opposing party, 2) its ability to pay, 3) the potential for deterring others in similar circumstances, 4) whether the moving party sought to benefit all plan participants or beneficiaries or to

---

[7]First Reliance contends that $20,320.20 is attributable to the administrative review process and urges us to reduce the fee award accordingly. Parke neither admits nor challenges this amount, although counsel did state during oral argument that he believed the amount to be in the in the range of $17,000-18,000. The calculation of the actual amount is more appropriately left to the district court.

resolve a significant legal question regarding ERISA, and 5) the relative merits of the parties' positions.  Id.  We review the district court's award for abuse of discretion, which "occurs when the district court commits a clear error of judgment in weighing the relevant factors."  Maune v. IBEW, Local No.1, Health & Welfare Fund, 83 F.3d 959, 964 (8th Cir. 1996) (internal quotation and citation omitted).

First Reliance does not focus on the five factors themselves, but rather on the district court's alleged failure to adequately weigh the offer of judgment made by First Reliance in March of 2000.[8]  First Reliance offered to have a $25,000 judgment taken against it under Rule 68 of the Federal Rules of Civil Procedure, "based on the claims in the complaint and based on the purported class action claims."  Parke's counsel rejected the offer.  First Reliance argues that the district court should not have awarded fees incurred after the offer because the offer exceeded the amount to which Parke was entitled at the time it was made.  See Fed. R. Civ. P. 68 ("If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer."); Moriarty v. Svec, 233 F.3d 955, 967 (7th Cir. 2000) ("Substantial settlement offers should be considered by the district court as a factor in determining an award of reasonable attorney's fees, even where Rule 68 does not apply.").  Parke's counsel responds by arguing that he could not justifiably have accepted an offer on behalf of an entire class that had not yet been (and never would be) certified; thus, the offer of judgment should not affect the district court's award.  For its part, the district court concluded that First Reliance's failure to specifically include attorney's fees in the offer meant that Rule 68 did not *per se* preclude the award of post-offer fees.  Nonetheless, the district court believed that Parke's rejection of the offer of judgment should be considered in deciding

---

[8]First Reliance did argue that Parke failed to raise a "significant legal question regarding ERISA," but we believe the question of whether interest on wrongfully withheld or delayed benefits remains a permissible legal remedy under § 1132(a)(3)(B) after Knudson clearly meets this description.

whether to award fees and in what amount. The district court ultimately awarded Parke almost all of the fees she requested.

We conclude that the district court did not abuse its discretion by awarding attorney's fees to Parke even though she rejected First Reliance's offer of judgment. By its own language, the offer was intended to settle the putative class action claims in addition to Parke's individual claim. However, First Reliance did not apportion the $25,000 offer between the settlement of Parke's individual claim and the putative class claim. Thus, it is impossible to determine whether Parke ultimately recovered more than the amount offered by First Reliance with respect to her individual claim. See Moriarty, 233 F.3d at 967 ("[A]n offer is substantial if. . . the offered amount appears to be roughly equal to or more than the total damages recovered by the prevailing party.").

The fact that Parke had not yet attempted to certify the class at the time of the offer is irrelevant. First Reliance clearly recognized the imminence of the class action claim and adjusted its offer accordingly. We see no reason why First Reliance would include the "purported class action claims" in its offer if it valued Parke's individual claim at $25,000.

Parke's ultimate failure to certify a class also does not affect our conclusion. The district court refused to award fees Parke incurred in her pursuit of the class claim. If First Reliance intended for its Rule 68 offer to have legal consequences related to her individual claim, it should have written its offer letter accordingly.

The proportion of attorney's fees to the judgment also does not persuade us to reverse the district court's award. The parties blame each other for the amount of time and resources expended in the lawsuit, and the district court was in the best position to evaluate the relative roles of the parties in extending the litigation. See Griffin v.

-20-

Jim Jamison, Inc., 188 F.3d 996, 997 (8th Cir. 1999) ("[District] courts are necessarily more familiar than we are with the members of their own bar and with the course of litigation before them, including what lawyers may have done that was unnecessary and what may have taken up more time than it needed to.").  While we are concerned with the significant discrepancy between the damage award and attorney's fees, we cannot conclude that the district court abused its discretion in making such an award.

VI.

We affirm the district court in all respects except its award of attorney's fees incurred during the administrative review of Parke's claim.  We reverse on this issue and remand to the district court with instructions to deduct these fees from its judgment.

_____